[No. C009361. Third Dist. Nov. 20, 1991.]

TED LOWE et al., Plaintiffs and Appellants, v.
CALIFORNIA RESOURCES AGENCY et al., Defendants and Appellants.

COUNSEL

Loren E. McMaster for Plaintiffs and Appellants.

Christopher W. Waddell and M. Jeffrey Fine for Defendants and Appellants.

OPINION

**NICHOLSON, J.**—Eleven supervisory land surveyors employed by the State of California Resources Agency (Resources Agency)[1] filed a petition for writ of mandate in superior court to compel the Resources Agency and Department of Personnel Administration (DPA) to make salaries for surveyors in the land surveyor classification comparable to salaries for surveyors classed as boundary determination officers. The petition alleged DPA violated Government Code section 19826 which requires "like salaries . . . be paid for comparable duties and responsibilities."[2] ■■ Plaintiffs also sought backpay, benefits, and attorney fees.[3]

The court ordered DPA to conduct a quasi-legislative hearing on plaintiffs' salary adjustment claim, and a quasi-adjudicative hearing on plaintiffs' claim

---

[1] In addition to Ted Lowe, plaintiffs include John Blodger, Ronald Brinsky, Robert Bailey, John Coplantz, Darrell Fullerton, Jerome Klopotek, Michael Rumsey, Robert Souders, Warren Spratford, and Garry Weldon.

[2] All statutory references are to the Government Code unless otherwise indicated.

[3] In the employment discrimination context, the term "[b]ack pay refers to the amount that plaintiff would have earned but for the employer's unlawful conduct, minus the amount that plaintiff did earn or could have earned if he or she had mitigated the loss by seeking or securing other comparable employment. Back pay includes . . . fringe benefits (such as medical insurance), and all other compensation that would have been obtained but for the

for backpay. It suggested the hearings be held in conjunction with a quasi-legislative hearing DPA had already scheduled on plaintiffs' claim the job classifications were misallocated under section 19818.6. The court denied plaintiffs' request for attorney fees.

Plaintiffs appeal, contending the court erred in (1) failing to rule on the merits of the section 19826 salary adjustment claim and remanding the matter to the DPA, (2) ordering a quasi-legislative rather than a quasi-adjudicative hearing on the salary adjustment claim, and (3) denying their request for attorney fees. On cross-appeal, defendants assert (1) plaintiffs failed to exhaust their administrative remedies before seeking judicial relief, (2) the statute of limitations bars plaintiffs' action on the merits, and (3) the court erred in granting plaintiffs a quasi-adjudicative hearing on the question of backpay. We reverse the portion of the order which directs DPA to conduct a quasi-adjudicative hearing on plaintiffs' backpay claim, and affirm the order in all other respects.

## INTRODUCTION

The Legislature created California's first civil service system in 1913 to combat political patronage in state employment. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 181-182 [172 Cal.Rptr. 487, 624 P.2d 1215].) Abuse of that system resulted in a 1934 initiative creating, by constitutional amendment, a nonpartisan State Personnel Board with power to enforce the state civil service laws. (*Id.* at pp. 204-205.) "[T]he 'sole aim' of the amendment was to establish, as a constitutional mandate, the principle that appointments and promotions in state service be made solely on the basis of merit." (*Id.* at pp. 183-184.) The constitutional provision left the Legislature free to enact other laws relating to personnel administration. (*Id.* at p. 183 and fn. 6 [Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 6, 1934) argument in favor of Prop. 7, p. 12].)

This case concerns statutes which govern two essential components of the civil service system: allocation and salary-setting. "Allocation" is a term of art. As we describe more fully below, every civil service position must be allocated to its appropriate class. Salary ranges are then established for each class. As background for consideration of the facts and legal issues presented by the parties, we first describe the statutory scheme.

---

discrimination." (3 Wilcox, Cal. Employment Law (1991) EEO Civil Actions, State Law, § 43.01[8][b], pp. 43-44, 43-45, fns. omitted.) The term is accorded the same meaning in wrongful termination cases involving civil service employees. (See, e.g., *Fugitt* v. *City of Placentia* (1977) 70 Cal.App.3d 868 [139 Cal.Rptr. 123].) All references to plaintiffs' backpay claim should be read to include the benefit claim.

A. *The State Personnel Board and DPA*

The Constitution provides the five-member State Personnel Board "shall enforce the civil service statutes and, by majority vote of all its members, *shall prescribe* probationary periods and *classifications*, adopt other rules authorized by statute, and review disciplinary actions." (Cal. Const., art. VII, § 3, subd. (a), italics added.) ■ The State Personnel Board has exclusive jurisdiction to classify positions in the state civil service. (*Stockton* v. *Department of Employment* (1944) 25 Cal.2d 264, 272 [153 P.2d 741].)

In 1981, the DPA succeeded to "the duties, purposes, responsibilities, and jurisdiction exercised by the State Personnel Board with respect to the administration of salaries, hours and other personnel related matters, training, performance evaluations, and layoffs and grievances." (§ 19816, added by Stats. 1981, ch. 230, § 55, p. 1170.) The DPA has authority to "[h]old hearings, subpoena witnesses, administer oaths, and conduct investigations concerning all matters relating to [its] jurisdiction." (§ 19815.4, subd. (e).)

B. *Allocation of Positions*

Under 1985 legislation, DPA assumed responsibility for administration of the personnel classification plan. (§ 19818.) DPA's administrative duties include "the allocation of every position to the appropriate class in the classification plan. The allocation of a position to a class shall derive from and be determined by the ascertainment of the duties and responsibilities of the position and shall be based on the principle that all positions shall be included in the same class if:

"(a) The positions are sufficiently similar in respect to duties and responsibilities that the same descriptive title may be used.

"(b) Substantially the same requirements as to education, experience, knowledge, and ability are demanded of incumbents.

"(c) Substantially the same tests of fitness may be used in choosing qualified appointees.

"(d) The same schedule of compensation can be made to apply with equity." (§ 19818.6.)

Employees adversely affected by the allocation or reallocation of their positions have a "[r]easonable opportunity to appeal." (§ 19818.20.)

C. *Out-of-class Claims*

DPA also reviews claims by individual employees who seek additional reimbursement for duties performed outside the scope of their present

classification, i.e., "out-of-class" claims. It may authorize reimbursement "for a period no greater than one year preceding the filing of a claim." (§ 19818.16.)

D. *Salary Setting*

With respect to the administration of salaries, section 19826, subdivision (a), states: "The [DPA] shall establish and adjust salary ranges for each class of position in the state civil service subject to any merit limits contained in Article VII of the California Constitution. *The salary range shall be based on the principle that like salaries shall be paid for comparable duties and responsibilities.* In establishing or changing such ranges consideration shall be given to the prevailing rates for comparable service in other public employment and in private business. The department shall make no adjustments which require expenditures in excess of existing appropriations which may be used for salary increase purposes. *The department may make a change in salary range retroactive to the date of application for such change.*" (Italics added.)

As we have stated, plaintiffs' petition for writ of mandate involves DPA's denial of their request for hearing on salary adjustment and backpay claims arising from the alleged violation of section 19826. We now describe the facts which gave rise to those claims.

FACTUAL AND PROCEDURAL BACKGROUND

The Resources Agency consists of numerous departments, boards, and commissions, including the Department of Water Resources, the Department of Parks and Recreation, the Department of Forestry and Fire Protection, and the State Lands Commission. (§ 12805.) Licensed land surveyors employed by the Departments of Water Resources, Parks and Recreation, and Forestry and Fire Protection are classified under the land surveyor series. Licensed land surveyors employed by the State Lands Commission are classified in the boundary determination officer (BDO) series. The salary range established by the DPA for the land surveyor series is less than the range for the BDO series.

This dispute over salary parity has a lengthy history. The State Personnel Board first established the BDO classification in 1967. The classification was expanded in 1973. In response to requests from the Department of Water Resources to make land surveyor salaries comparable to BDO salaries, the State Personnel Board conducted various studies to determine whether land surveyors were properly classified. In 1987, the DPA denied a Department of

Water Resources' request for salary adjustment on grounds it was unsupported by evidence of "recruitment and/or retention problems or any other compelling management need."

Beginning in 1981, Lowe and other licensed land surveyors contacted their respective departments, DPA, the State Personnel Board, and the association which represents rank and file land surveyors in an effort to equalize salaries. At the end of 1988, they appeared before the State Personnel Board to challenge changes in the land surveyor series made to accommodate the Department of Transportation. Lowe and others told the State Personnel Board they believed "land surveyors and BDOs in the Resources Agency did comparable work and should be paid the same."

Frustrated by what he viewed as a violation of section 19826, Lowe wrote Beth Martinez, consultant to the Assembly Committee on Public Employment, Retirement, and Social Security in July 1988. Lowe explained he was excluded from collective bargaining because he was a supervisory employee, and asked if he had "the right to pursue equity through the use of Government Code 19826 (a)." Martinez apparently contacted the DPA. The DPA's proposed response stated Lowe had "the right, as a supervisory employee, to appeal any pay action taken by the DPA which [affected him] by requesting to meet and confer." Martinez forwarded the DPA response.

Lowe and the other plaintiffs hold positions as chief of land surveyors and land surveyor supervisors in the land surveyor series in the Departments of Water Resources, Parks and Recreation, and Forestry and Fire Protection. In March 1989, they asked the DPA for a hearing, claiming (1) positions in the land surveyor and BDO series were misallocated in violation of section 19818.6, (2) salary ranges set for the land surveyor and BDO series violated section 19826, and (3) they were entitled to lost compensation.

The DPA granted plaintiffs a quasi-legislative hearing on the section 19818.6 allocation issue, but declined to conduct a separate adjudicative hearing on the questions of salary adjustment and backpay under section 19826.

Plaintiffs filed their petition for writ of mandate in October 1989. Defendants demurred, asserting the section 19826 claim was barred by the statute of limitations and plaintiffs' failure to exhaust administrative remedies. Defendants also argued section 19815.8 limited any backpay recovery to one year.

The court overruled the demurrer, took the petition under submission, and issued a statement of decision in May 1990. Both parties appeal from the

court's ruling. We consider the issues raised by plaintiffs' appeal before addressing issues raised in the cross-appeal.

DISCUSSION

I

*Plaintiffs' Appeal*

A. *Introduction*

Plaintiffs' briefs describe the history of the land surveyor/BDO salary dispute, and express profound distrust in the DPA's ability to treat them fairly. Plaintiffs attempt to reduce or eliminate the impact of the proposed DPA hearings in two ways.

First, plaintiffs argue the superior court should have addressed the merits of the section 19826 salary adjustment claim. Second, they say any remand should involve a quasi-adjudicative hearing before the DPA. The significance of the latter point is less obvious than the significance of the former, and requires a brief explanation.

Administrative agencies such as the DPA have rulemaking and adjudicative powers similar to the legislative and judicial powers of legislatures and courts. (1 Ogden, Cal. Public Agency Practice (1991) Adjudication by Agencies, § 30.02, p. 30-2.) ■ Rulemaking, or "quasi-legislative" action, involves the formulation of rules to be applied to all future cases. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29].) ■ Adjudicative, or "quasi-judicial," acts involve the actual application of such rules to a specific set of existing facts. (*Ibid.*) An administrative hearing may involve both legislative and adjudicative functions, depending on the questions the administrative agency is asked to resolve. (See *Dominey* v. *Department of Personnel Administration* (1988) 205 Cal.App.3d 729, 738 [252 Cal.Rptr. 620].)

■ The legislative/adjudicative distinction is important because the character of the administrative hearing determines the standard of review on appeal. Quasi-legislative determinations are reviewed by ordinary mandamus (Code Civ. Proc., § 1085) under the "arbitrary and capricious standard." Quasi-adjudicative decisions are reviewed by administrative mandamus (Code Civ. Proc., § 1094.5) under either the substantial evidence or independent judgment standard. (*Dominey* v. *Department of Personnel Administration, supra,* 205 Cal.App.3d at p. 736.)

Plaintiffs anticipate appellate review of an adverse DPA decision on the salary adjustment and backpay claims. If the claims are remanded for quasi-adjudicative hearings, plaintiffs may invoke a higher standard of review on appeal.

### B. *Remand Is Proper*

Plaintiffs assert there was sufficient evidence before the court to enable it to (1) determine DPA had violated section 19826, and (2) order DPA to make land surveyor salaries equivalent to BDO salaries. Therefore, they argue, the court erred in remanding the salary adjustment issue for hearing before the DPA.

We disagree the record was sufficiently developed to permit the court to rule on the merits of plaintiffs' salary adjustment claim. However, even if the record were adequate, the doctrine of exhaustion of administrative remedies would have prevented the court from assuming the DPA's salary-setting function.

Under this well-recognized rule of procedure, "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) "The reason for the rule is that if a court allowed a suit to be maintained prior to final administrative determination, the court would be interfering with the subject matter jurisdiction of another tribunal." (*Lund* v. *California State Employees Assn.* (1990) 222 Cal.App.3d 174, 183 [271 Cal.Rptr. 425].)

Plaintiffs attempt to invoke the "futility exception" to the exhaustion doctrine (see *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830 [112 Cal.Rptr. 761]) by recounting the history of the salary parity dispute and asserting the DPA "has repeatedly demonstrated that it will not provide a fair and impartial hearing . . . ." However, there is no evidence to support plaintiffs' assertion. Plaintiffs filed their petition for writ of mandate in response to the DPA's *refusal* to conduct a hearing on claims for salary adjustment and backpay. The DPA has never conducted a hearing on these questions.

If plaintiffs are dissatisfied with the DPA's rulings following the court-ordered hearings, they may seek judicial review on the merits of their claims armed with a fully developed administrative record. The court may then exercise its proper function. Meanwhile, we conclude the court did not err in remanding the substantive questions to the DPA for determination.

### C. *The Hearing on the Salary Claim Should Be Quasi-legislative*

We next address the question whether plaintiffs are entitled to a hearing on their salary adjustment claim *in addition to* the hearing on the section 19818.6 allocation claim, and, if so, what type of hearing is required.

The DPA has consistently maintained the quasi-legislative hearing on the section 19818.6 allocation issue, which they previously granted but have not yet held, will resolve all plaintiffs' claims. "If at the allocation hearing the DPA concluded that land surveyors and BDOs perform comparably or similarly, DPA would presumably answer the question posed in Government Code Section 19818.6(d); namely, whether the same salary can be made to apply with equity. Thus, DPA could decide that the positions should be included in the same class thereby eliminating one class or that although two classes are justified, they should be paid the same."

DPA must conduct hearings on all matters related to its jurisdiction. (*Dominey* v. *Department of Personnel Administration, supra,* 205 Cal.App.3d at pp. 735-736.) As we stated, the DPA is responsible for allocation of positions to a class *and* adjustment of salary ranges for those positions. (§§ 19818.6 and 19826.)

Accordingly, the court properly rejected the DPA argument, finding the plaintiffs "may have additional evidence on their claims to a salary readjustment and to backpay, which they did not present because hearings on these issues were denied." The court attempted to avoid possible duplication of effort by suggesting the hearings on the salary adjustment and backpay issues be held in conjunction with the hearing on the allocation issue.

The more interesting question is whether the hearing on the section 19826 salary adjustment issue should be quasi-legislative or quasi-judicial. Setting compensation for public employees is a legislative function. (*State Trial Attorneys' Assn.* v. *State of California* (1976) 63 Cal.App.3d 298, 303 [133 Cal.Rptr. 712].) In *State Trial Attorneys' Assn.,* four attorneys employed by the Department of Transportation sought salary parity with attorneys holding equivalent positions in other state agencies pursuant to former section 18850, the predecessor of section 19826. Specifically, plaintiffs complained upper level attorneys at the Department of Transportation were placed in compressed salary ranges consisting of three steps, instead of the normal, five-step salary range used by the Attorney General and Legislative Counsel Bureau. Salary discrepancies varied between $212 and $497 per month. (63 Cal.App.3d at pp. 301-302.)

As noted in *Dominey, supra,* 205 Cal.App.3d at page 739, *State Trial Attorneys' Assn.* "did not involve the adjudicative question whether the

attorney claimants *in fact* performed the same functions as employees in a higher job classification." (Italics in original.) Plaintiffs attempt to mold their claim into this type of adjudicative question on appeal: "[D]o these claimants in the Land Surveyor series in fact perform the same functions as employees in the BDO classification, . . ." However, plaintiffs presented a different question in their request for hearing before the DPA. At that time, plaintiffs claimed DPA had violated section 19826 by assigning different salary *ranges* to positions in the land surveyor and BDO series.

We find no meaningful difference between plaintiffs' original claim and the claim presented in *State Trial Attorneys' Assn.* Both claims sought an agency determination that assigned job classifications and salary ranges violated the mandate employees receive like pay for like work. Although both claims were filed by individual employees, the claims focused on adjustment of salary ranges, not the question whether individual attorney claimants performed the same functions as the attorneys receiving higher pay. Accordingly, we conclude the court was correct in ruling plaintiffs were entitled to a quasi-legislative hearing on the section 19826 salary adjustment question.

Plaintiffs also assert the court should have ordered the DPA to pay land surveyor supervisors a salary differential of at least 10 percent above the salary for associate land surveyors pursuant to "a clear policy and practice" within the agency. Because this issue was not presented in plaintiffs' request for hearing before the DPA or in plaintiffs' petition for writ of mandate, the court properly declined to consider it.

### D. *Plaintiffs Are Not Entitled to Attorney Fees*

Following entry of judgment, plaintiffs requested $13,145.28 in costs and attorney fees pursuant to Code of Civil Procedure section 1021.5. The court granted defendants' motion to strike and tax costs with respect to items totaling $11,500.57. Plaintiffs assert the court's ruling was erroneous.

Code of Civil Procedure section 1021.5 authorizes court-awarded attorney fees under a private attorney general theory. (*Johnston* v. *Department of Personnel Administration* (1987) 191 Cal.App.3d 1218, 1227 [236 Cal.Rptr. 853].) "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate,

and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ." (Code Civ. Proc., § 1021.5.)

The court found plaintiffs had "only partially prevailed on the issues, [had] not conferred significant benefit on the general public or a large class, [had] not set forth the amount of attorney fees attributable to the limited issue on which they prevailed and [had] not demonstrated the necessity and financial burden to make the award of attorney fees appropriate." The court continued, "[T]he court does not find that the interests of justice are served by ordering respondent to pay fees. Awarding attorney fees at this time is premature and that the costs associated with the deposition testimony of James Dorsey go to the merits of the case and not to the limited issue upon which the petitioners have prevailed." The record amply supports the court's findings.

Although plaintiffs' efforts may have advanced their own interests in achieving salary parity, as well as the interests of others employed in the land surveyor series, they have not shown they conferred a benefit on a large class of persons or on the public at large. The trial court did not err in denying the attorney fees requested under the private attorney general doctrine.

We also reject plaintiffs' claim they are entitled to attorney fees under section 800.[4] Plaintiffs did not seek section 800 attorney fees in the court below, and may not argue that basis for an award of fees for the first time on appeal.

II

*Defendants' Cross-appeal*

A. *The Petition Is Not Barred by Exhaustion Doctrine*

A portion of the cross-appeal involves arguments presented to the court in defendants' unsuccessful demurrer to plaintiffs' petition for writ of mandate.

---

[4]Section 800 reads in part: "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law, except actions resulting from actions of the State Board of Control, where it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity, the complainant if he or she prevails in the civil action may collect reasonable attorney's fees, computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500), where he or she is personally obligated to pay the fees, from the public entity, in addition to any other relief granted or other costs awarded."

They contend plaintiffs failed to exhaust administrative remedies in two ways, and argue plaintiffs' petition for writ of mandate was premature.

Defendants assert plaintiffs sought only a *quasi-adjudicative* hearing before the DPA on their salary adjustment claim. Citing *Dominey v. Department of Personnel Administration, supra*, 205 Cal.App.3d 729, defendants say plaintiffs should have requested a *quasi-legislative* hearing on that issue. Defendants' argument is unsupported by the facts and the law.

Plaintiffs first requested a hearing before the DPA on March 2, 1989. Their letter set forth three issues to be determined, but did not mention the *type* of hearing requested. DPA responded the nature of plaintiffs' problem was unclear, and directed them to raise their concerns with the affected departments.

In a second letter dated March 28, 1989, plaintiffs explained they had raised their concerns with their departments. Plaintiffs then set forth the specifics of their claims, and referenced their earlier request for an *administrative* hearing. The DPA's May 11, 1989, response granted plaintiffs the quasi-legislative hearing on the allocation issue, but posed additional questions concerning the other claims. On June 19, 1989, plaintiffs wrote the DPA to confirm the procedure to be used in the quasi-legislative hearing. In that letter they reiterated their request for a quasi-adjudicative hearing on the remaining issues.

Following a September 1989 meeting to clarify the procedures to be followed in the quasi-legislative hearing, the DPA wrote plaintiffs a separate hearing on the section 19826 salary adjudication claim was "not warranted." The DPA justified its decision by asserting all plaintiffs' claims could be resolved in the quasi-legislative hearing already scheduled. At no time did the DPA contend its denial of the salary adjustment hearing was based on plaintiffs' failure to request a quasi-legislative hearing on the remaining issues.

The court correctly determined plaintiffs were not required to request the precise type of hearing to which they were entitled. Plaintiffs gave the DPA notice of the substance of their claims in clear language. The DPA's responses demonstrated its understanding of the questions raised. The DPA had the opportunity act and render litigation unnecessary. The fact the agency was alerted to the issues later raised in the petition before the superior court was sufficient to satisfy the exhaustion requirement. (See *East Peninsula Ed. Council, Inc. v. Palos Verdes Peninsula Unified School Dist.* (1989) 210 Cal.App.3d 155, 176-177 [258 Cal.Rptr. 147]; and *Citizens Assn. for Sensible*

*Development of Bishop Area* v. *County of Inyo* (1985) 172 Cal.App.3d 151, 162-163 [217 Cal.Rptr. 893].)

Alternatively, defendants assert plaintiffs should have completed the quasi-legislative hearing on the allocation claim before seeking judicial review of the DPA's denial of their request for hearings on the salary adjustment and backpay issues. This argument is faulty because (1) the parties viewed the allocation and salary adjustment claims as separate issues based on different statutes, and (2) DPA expressly denied plaintiffs a hearing on the section 19826 salary adjustment issue. Plaintiffs had every reason to take the DPA denial at face value and pursue extraordinary relief before the superior court.

### B. *The Petition Is Not Barred by Statute of Limitations*

Section 19815.8 defines the limitations period for actions relating to any law administered by DPA:

"(a) No action or proceeding shall be brought by any person having or claiming to have a cause of action or complaint or ground for issuance of any complaint or legal remedy for wrongs or grievances based on or related to any law administered by the Department of Personnel Administration unless the action or proceeding is commenced and served *within one year after the cause of action or complaint or ground for issuance of any writ or legal remedy first arose.* Such a person shall not be compensated for the time subsequent to the date when the cause or ground arose unless the action or proceedings is filed and served within 90 days after the cause or ground arose. *Where an appeal is taken from a decision of the department, the cause of action does not arise until the final decision of the department.*" (Italics added.)

Defendants do not dispute the timeliness of plaintiffs' petition for writ of mandate with respect to the DPA's denial of their request for a hearing on the salary adjustment and backpay claims. However, defendants argue section 19815.8 is a bar to plaintiffs' action to compel consideration of the merits of their claim. ▪▪▪ Specifically, DPA argues the ground for issuing a writ accrued in May 1987 at the latest, when the DPA rejected the Department of Water Resources' request for upward salary adjustment for associate land surveyors and land surveyor supervisors. Plaintiffs filed their petition for writ of mandate on October 17, 1989, more than two years later.

The court rejected defendants' argument plaintiffs' request for hearing was untimely, citing *City and County of San Francisco* v. *Fair Employment & Housing Com.* (1987) 191 Cal.App.3d 976 [236 Cal.Rptr. 716], an employment discrimination case in which the court applied the continuing violation

doctrine to avoid a one-year limitation period for filing a complaint with the state Fair Employment and Housing Commission. The court found plaintiffs were "paid according to the alleged illegal decision the year preceding the filing of their request."

We need not decide whether the continuing violation doctrine is applicable to claims otherwise limited by section 19815.8 because their October 17, 1989, petition was timely. Section 19815.8 expressly states "[w]here an appeal is taken from a decision of the department, the cause of action does not arise until the final decision of the department." The DPA's September 27, 1989, denial of plaintiffs' request for hearing was its first and only final decision on plaintiffs' claims.

The DPA cites no evidence plaintiffs were anything more than interested observers with respect to the Resources Agency's 1987 request for special salary adjustment. Indeed, that request involved salary parity between positions in a newly expanded land surveyor series and positions in the non-licensed engineering classes. It did not address the specific question of salary parity between supervisory land surveyors and BDO's.

Our conclusion the petition was timely reflects the equities of the parties' positions. The land surveyor/BDO salary dispute was characterized by conflict, confusion, and uncertainty. The battle was initially fought at the agency level. Although there were rumblings of employee dissatisfaction, it is unclear when the issue solidified for Lowe and other individual land surveyor supervisors.

Like many other citizens, Lowe finally turned to the Legislature for answers. He wrote Beth Martinez, consultant to the Assembly Committee on Public Employment, Retirement, and Social Security, on July 28, 1988, to inquire about his rights under section 19826, subdivision (a). Although Lowe's July 28 letter has no legal significance, it resulted in the DPA and Lowe acknowledging there was a problem. The DPA's response specifically identified Lowe, addressed the question he had posed to Martinez, and advised him of his right to pursue relief through section 19826. Plaintiffs requested a hearing before the DPA on March 2, 1989, eight months later. Even if one were to conclude plaintiffs' cause of action accrued on the date of DPA's response to Lowe, the petition is not time-barred. The limitations period was tolled for the period in which plaintiffs pursued administrative remedies—from March 2, 1989, to September 27, 1989, when DPA denied the request for hearing on the salary adjustment and backpay claims. (*Campbell* v. *Graham-Armstrong* (1973) 9 Cal.3d 482, 490 [107 Cal.Rptr. 777, 509 P.2d 689]; see also 2 Ogden, Cal. Public Agency Practice (1990) Timing of Mandamus, § 51.10[3], p. 51-33.)

Moreover, DPA never mentioned any question regarding the timeliness of plaintiffs' claims in its correspondence with plaintiffs' counsel following the March 2, 1989, request for hearing. Indeed, the section 19815.8 limitations period was no impediment to DPA granting a hearing on plaintiffs' allocation claim. It therefore appears DPA raised the statute of limitations issue as an afterthought in its demurrer to the petition for writ of mandate. We defer to DPA's expertise in handling requests for hearing, and its initial conclusion there was no problem with the timeliness of plaintiffs' claim.

## C. *The Plaintiffs Are Not Entitled to a Separate Hearing on Backpay*

Plaintiffs' petition for writ of mandate seeks compensation for "lost backpay and benefits *as a result of their wrongfully established salary range.*" (Italics added.) The court ordered DPA to conduct a separate quasi-adjudicative hearing on the backpay issue. That order was erroneous for reasons we explain.

We already described the distinction between quasi-legislative and quasi-adjudicative actions by administrative agencies, and stated salary-setting under section 19826 is a quasi-legislative function.[5] (*State Trial Attorneys' Assn.* v. *State of California, supra,* 63 Cal.App.3d at p. 303.) Similarly, the DPA performs a quasi-legislative function when it allocates or reallocates positions to a class pursuant to section 19818.6. (*Dominey* v. *Department of Personnel Administration, supra,* 205 Cal.App.3d at p. 738.) DPA's allocation and salary-setting functions affect classes of civil service employees. Administrative relief focuses on groups of employees within a particular class or salary range. (See, e.g., *Dominey* v. *Department of Personnel Administration, supra,* 205 Cal.App.3d 729 [reallocation of special investigator series to the special agent series]; and *State Trial Attorneys' Assn.* v. *State of California, supra,* 63 Cal.App.3d 298 [salary parity between civil service attorneys working at the Department of Transportation and the Office of the Attorney General].)

DPA performs a different, quasi-adjudicative function when it hears section 19818.16 claims for reimbursement by employees who allege they are performing "out-of-class" work. (*Dominey* v. *Department of Personnel Administration, supra,* 205 Cal.App.3d at pp. 738-739.) To resolve these claims, DPA is required to apply "established rules (i.e., the job descriptions of . . . investigators and special agents) to existing facts, i.e., the actual duties performed by plaintiffs as established by evidence at the hearing." (*Id.* at p. 739.)

Neither section 19818.6 nor 19826 authorizes individual backpay claims. However, the DPA has discretion under section 19826 to "make a change in

[5]See discussion at pages 1149 and 1151, *ante.*

*salary range* retroactive to the date of application for such change." (Italics added.)[6] Where DPA grants requests for reallocation or salary adjustment, the ruling affects all employees in the revised classification or salary range. Conceivably, classifications and salary ranges may be adjusted up *or* down. If DPA decided to make an upward salary adjustment retroactive pursuant to section 19826, it would authorize payment to persons employed in the disputed salary range up to one year before the date the claim was filed. There would be no need to conduct a quasi-adjudicative hearing to make that determination.

The same is true for the case before us. If DPA rules in the quasi-legislative hearing plaintiffs are performing work comparable to that performed by BDO's, salaries would be readjusted upward for all persons in the disputed salary range. There is no need or legal justification for a separate quasi-adjudicative hearing on plaintiffs' backpay claim. We therefore reverse the portion of the order which directs DPA to conduct a quasi-adjudicative hearing on the question of backpay.

### DISPOSITION

The order directing DPA to conduct a quasi-adjudicative hearing on plaintiffs' backpay claim is reversed. The order is affirmed in all other respects. The parties shall bear their own costs on appeal.

Marler, Acting P. J., and Scotland, J., concurred.

---

[6]The sentence authorizing retroactive changes in salary range was added to section 18850, the predecessor statute to section 19826, in 1945. (Stats. 1945, ch. 1279, § 1, p. 2406.) There is nothing in available legislative history to suggest the Legislature intended the amendment to authorize individual backpay claims. The California State Employees' Association provided the following explanation in support of passage:

"This law would permit the Personnel Board to take more time and ma[k]e a thorough study of the factors involved in the request because it would know that if it ultimately decided in favor of the employee it might or might not, at its own discretion, make the increase effective back to the date of application so that the employee would not be injured by any delay in the Board's action so far as obtaining the increase is concerned.

"The Board could well find that the inequity in the pay range existed at the date of application and that the employee should not be penalized by the time required by the Board to make the full and complete study, in receiving any increase found warranted.

"This, of course, is now the common practice in private industry and it is also the law as far as hourly and per diem employees in State service.

"The[re] is no opposition of any kind to the bill." (CSEA Letter dated June 27, 1945; Governor's Bill File.)