[No. F020367. Fifth Dist. Sept. 12, 1994.]

DAVID LARSON, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

266

COUNSEL

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, and Jose R. Guerrero, Deputy Attorney General, for Defendant and Appellant.

John Patrick Moore for Plaintiff and Respondent.

OPINION

**MARTIN, Acting P. J.**—California State Personnel Board (Board) appeals from a judgment granting peremptory writ of administrative mandamus (Code Civ. Proc., § 1094.5, subds. (f), (g)) to compel reversal of David Larson's (Larson) termination as a teacher with real party in interest Department of Developmental Services (DDS).[1]

### STATEMENT OF THE CASE

DDS discharged Larson as a teacher at the Porterville Developmental Center effective July 24, 1992, based on his alleged sexual molestation of developmentally disabled clients. Larson appealed the dismissal to the Board.

---

[1] A judgment granting a peremptory writ of administrative mandamus is an appealable order. (Code Civ. Proc., §§ 1094.5, subd. (g), 1110; *International Film Investors* v. *Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 703 [199 Cal.Rptr. 690].)

On January 5, 1993, the appeal came before Administrative Law Judge Philip E. Callis of the Board. That same day, Larson and DDS entered into a written settlement agreement. DDS agreed to withdraw its adverse action of termination against Larson, Larson agreed to withdraw his appeal, and DDS agreed to reinstate Larson's employment subject to certain conditions. The administrative law judge advised the parties:

"I'm going to submit what you have told me to the Board. And I will prepare a proposed decision in which I describe what occurred and make a recommendation to the Board on what action they should take.

"Ultimately, it's the Board decision on whether or not to permit you to withdraw the action or not. And I will make a proposed decision. The parties, if there's disagreement about what the Board does, they can certainly appeal it at that point."

Thereafter, the administrative law judge signed a proposed decision (1) disapproving DDS's attempted withdrawal of the adverse action of dismissal and Larson's attempted withdrawal of his appeal therefrom; (2) referring the matter to the Board hearing office for a new hearing on the merits of the appeal or, in the alternative, the parties' submission of a settlement agreement for Board approval; and (3) maintaining Larson's status as a dismissed employee pending final disposition of the appeal. The Board adopted the administrative law judge's proposed decision as its decision in the case.

On March 25, 1993, Larson filed a petition for writ of administrative mandamus in Tulare County Superior Court. The petition named the Board as respondent and prayed for a peremptory writ to compel reversal of the Board's order discharging Larson as a teacher with DDS. Larson later amended the petition to include the Board's record of administrative hearing and the Board filed written opposition to the petition for writ.

On June 24, 1993, the court conducted a hearing and granted the petition by minute order, stating: "Now, look, the Court never even gets to the question of interpretation of [Government Code] section 18681. The employee's withdrawal of this appeal on January 5th, 1993 deprived the State Personnel Board of any further jurisdiction, and for all purposes in the appeal, the Board acted officiously and in excess of jurisdiction when it rendered its decision in this matter . . . ."

On July 16, 1993, the court filed a formal judgment granting peremptory writ of mandamus and on August 12, 1993, the court filed the peremptory writ of mandamus.

The Board timely appealed.

On April 22, 1994, the Board filed a request for judicial notice of 14 documents relating to the constitutional and statutory authority of the Board.[2]

## FACTS

The following facts are taken verbatim from the Board's opening brief on appeal as adopted by Larson's brief on appeal:

"Plaintiff and respondent Larson was employed as a teacher of developmentally disabled clients at Porterville Developmental Center since 1978. The Department of Developmental Services (hereinafter 'DDS') dismissed Larson on July 24, 1992. The stated cause for dismissal was that he sexually molested two female patients. Larson appealed his dismissal and the matter was set for hearing on January 5, 1993. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Petitioner Larson's appeal from dismissal was heard on January 5, 1993 before Administrative Law Judge Phil Callis. Both Larson and DDS were represented by legal counsel. . . . The parties discussed settlement between themselves, and eventually advised Judge Callis that they had reached a settlement and wanted the hearing taken off[]calendar. The Administrative Law Judge advised the parties that their settlement needed to be submitted to the Board for approval pursuant to Government Code section 18681. . . . The parties did not want to submit their proposed settlement to the Board because they knew it would violate Board policy. . . . Instead, they sought to take the case off calendar and enter into a secret settlement thereby circumventing the established State Civil Service system. . . .

"Thereafter, the parties advised Judge Callis that the terms of their tentative settlement included, among other provisions, a muzzle clause similar to the one rejected by the Board in a Board precedential decision *Pamela Martin*. . . .

---

[2]Judicial notice may not be taken of any matter unless authorized or required by law. (Evid. Code, § 450.) Judicial notice may be taken of the official acts of the legislative, executive, and judicial departments of any state of the United States. (Evid. Code, § 452, subd. (c).) A reviewing court may take judicial notice of any matter specified in Evidence Code section 452. (Evid. Code, § 459, subd. (a).) In the instant case, the Board essentially contends the proffered documents will clarify the Board's constitutional and statutory authority. While we may properly take judicial notice of these documents, we remind the Board we do not take judicial notice that everything contained in these documents is true. (See *Shaeffer* v. *State of California* (1970) 3 Cal.App.3d 348, 354 [83 Cal.Rptr. 347].)

"Judge Callis informed the parties that the Board would likely not approve such a settlement. At that point, the attorneys told Judge Callis that they were well aware of the *Pamela Martin* decision, and for that reason, they did not wish to submit their settlement to the Board for approval. The parties requested instead that Judge Callis take the hearing off[]calendar as DDS was planning to withdraw the Notice of Adverse Action and the appellant was going to withdraw his appeal. . . . The parties asserted that the Board had no jurisdiction to question the terms of their 'private' agreement and that the Board was required to accept the withdrawal of the action without further inquiry. . . .

"Judge Callis concluded the 'hearing' and stated that he would issue a proposed decision given the record before him. In his proposed decision, Judge Callis ruled that the parties could not unilaterally enter into their own private settlement agreement without the Board's approval and then dismiss the adverse action once they had invoked the Board's jurisdiction. . . . Judge Callis also stated in his proposed decision that the parties' refusal to present their stipulation to the Board for approval indicated to him that it was likely their secret settlement still violated the holding of *Pamela Martin*. . . .

"Judge Callis concluded that the parties' attempted withdrawal was ineffective, and that a hearing was to be reset before an SPB Administrative Law Judge. In the meantime, the parties were free to present a stipulated settlement to the Board for approval. . . .

"The SPB adopted Judge Callis['s] proposed decision as its own Board decision at its meeting of March 2 and 3, 1993. . . . On April 2, 1993, DDS filed a petition for rehearing with the Board, asking it to reconsider its decision. The Board requested argument from DDS as to why it should grant its petition for rehearing. No further argument in support of the petition for rehearing was filed by DDS, and the petition was ultimately denied by the Board at its meeting on June 1, 1993. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

"On March 25, 1993, a Petition for Writ of Administrative Mandamus was filed by Larson naming the California State Personnel Board as respondent. . . . The Administrative Hearing Record was lodged with the court. . . .

"The plaintiff and respondent noticed a hearing on his writ of administrative mandamus and filed points and authorities. . . . The Board filed opposition and the hearing was held on June 24, 1994. The court granted the

petition on that same date. . . . Judgment granting the petition was filed and entered on July 16, 1993. Notice of Entry of Judgment and Judgment Granting Peremptory Writ of Mandamus was given on July 22, 1993. . . . A timely Notice of Appeal was filed by appellant Board on September 16, 1993."

## DISCUSSION

### I. *Did the Board Have Jurisdiction to Invalidate the Settlement Agreement?*

The Board contends (1) the trial court erred by failing to consider that statutes should be interpreted, whenever possible, consistent with the requirements of the Constitution; (2) once the parties have invoked the jurisdiction of the Board, public policy requires the Board retain oversight of proposed settlements that thwart the civil service statutes; (3) the trial court erred by sanctioning an illegal employment contract; and (4) Government Code section 18681, when read in the context of the civil service statutory framework and the Constitution, gives the Board jurisdiction to review proposed settlements. Thus, the trial court erred in concluding the Board did have jurisdiction to invalidate the settlement agreement between Larson and DDS.

The Legislature created California's first civil service system in 1913 to combat political patronage in state employment. Abuse of that system resulted in a 1934 initiative creating, by constitutional amendment, a nonpartisan Board with power to enforce the state civil service laws. The sole aim of the amendment was to establish, by constitutional mandate, the principle that appointments and promotions in state service be made solely on the basis of merit. The provision left the Legislature free to enact other laws relating to personnel administration. Article VII of the Constitution provides a five-member Board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions. (Cal. Const., art. VII, § 3, subd. (a).) In 1981, the Department of Personnel Administration (DPA) succeeded to the duties, purposes, responsibilities, and jurisdiction exercised by the Board with respect to the administration of salaries, hours, and other personnel-related matters, training, performance evaluations, and layoffs and grievances. (Gov. Code, § 19816.) The DPA has authority to hold hearings, subpoena witnesses, administer oaths, and conduct investigations concerning all matters relating to its jurisdiction. (Gov. Code, § 19815.4, subd. (e); *Lowe v. California Resources Agency* (1991) 1 Cal.App.4th 1140, 1145-1146 [2 Cal.Rptr.2d 558].)

■ The Board has been adjudicated a statewide administrative agency endowed by the Constitution with quasi-judicial powers. The factual determinations of such an agency must be upheld if supported by substantial evidence. In determining this question, a trial court is obligated to confine itself to the record of the administrative proceeding and to refrain from exercising its independent judgment on the weight of the evidence. Courts generally will defer to the broad discretion vested in administrative agencies when the evidence is conflicting, or even when reasonable people might well differ on questions of the credibility of witnesses, or upon the proper inferences to be drawn from the evidence, provided the findings are supported by substantial evidence. Where findings are devoid of evidentiary support or are based upon inferences arbitrarily drawn and without reasonable foundation, or are contrary to facts universally accepted as true and judicially known, the administrative order will be reversed as not being supported by substantial evidence in the light of the whole record. (*Lorimore* v. *State Personnel Board* (1965) 232 Cal.App.2d 183, 185-187 [42 Cal.Rptr. 640]; *Batson* v. *State Personnel Board* (1961) 188 Cal.App.2d 320, 324-325 [10 Cal.Rptr. 452]; *Bodenschatz* v. *State Personnel Board* (1971) 15 Cal.App.3d 775, 778 [93 Cal.Rptr. 471].)

■ Under its constitutional grant, the Board is empowered to review disciplinary actions and acts in an adjudicatory capacity. As such, the Board acts much as a trial court would in an ordinary judicial proceeding. Thus, the Board makes factual findings and exercises discretion on matters within its jurisdiction. The decisions of the Board are entitled to judicial deference on review. The record must be viewed in a light most favorable to the decision of the Board and its factual findings must be upheld if they are supported by substantial evidence. In addition, the Board's exercise of discretion must be upheld unless it abuses that discretion. (*Department of Parks & Recreation* v. *State Personnel Bd.* (1991) 233 Cal.App.3d 813, 823-824 [284 Cal.Rptr. 839].)

Where there is no dispute as to the facts and no conflicting inferences can be reasonably drawn therefrom, the issue becomes one of law and the conclusions of the trial court are not binding upon the reviewing court. (*Blitzstein* v. *Department of Motor Vehicles* (1988) 199 Cal.App.3d 138, 141-142 [244 Cal.Rptr. 624].) The parties to the instant appeal essentially agree the issue at hand is one of law and not one of fact.

■ The decisions of the Board are entitled to judicial deference only so long as the Board acts within its legal jurisdiction. An administrative agency has only such powers as have been conferred upon it by the Constitution or statute. An administrative agency may not validly act in excess of, or in

violation of, the powers conferred upon it. If it does so, the action taken is void and subject to being set aside through a proceeding in administrative mandate (Code Civ. Proc., § 1094.5, subd. (b).) (*Department of Parks & Recreation* v. *State Personnel Bd., supra,* 233 Cal.App.3d at p. 824.)

■ Generally speaking, the Board's authority in disciplinary matters is limited to that of reviewing disciplinary action taken by appointing authorities. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 201-202 [124 Cal.Rptr. 14, 539 P.2d 774].) An "appointing power" is a person or group having authority to make appointments to positions in the state civil service. (Gov. Code, § 18524; Cal. Code Regs., tit. 2, § 599.603.) Under our statutory scheme for employee discipline, the appointing power is vested with the initial authority to determine and impose appropriate discipline. The Board, in turn, is vested with the authority to review the appointing power's action. While the Board's authority is broad, it is not plenary. The Board may modify or revoke the appointing power's imposition of discipline for one of three reasons: (1) the evidence does not establish the fact of the alleged cause for discipline; (2) the employee was justified; or (3) the cause for discipline is proven but is insufficient to support the level of punitive action taken. Unless one of these factors is present, the appointing power's action must stand. (*Department of Parks & Recreation* v. *State Personnel Bd., supra,* 233 Cal.App.3d at pp. 825-827.)

The appointing power or its authorized representative may take adverse action against an employee for one or more of the causes for discipline specified by statute, including conviction of a felony, conviction of a misdemeanor involving moral turpitude, or immorality. (Gov. Code, §§ 19572, subds. (k), (*l*), 19574.) "Adverse action" means dismissal, demotion, suspension, or other disciplinary action. (Gov. Code, § 19570.) No later than 20 calendar days after service of the notice of adverse action, the employee may file a written answer to the notice with the Board. Whenever an answer is filed to an adverse action, the Board or its authorized representative shall hold a hearing within a reasonable time. (Gov. Code, § 19578.) Failure of either party (the employee, the employer, or their representatives) to proceed at the hearing shall be deemed a withdrawal of the action or appeal, unless the hearing is continued by mutual agreement of the parties, or upon showing of good cause. (Gov. Code, § 19579.)

The following exchange occurred at the January 5, 1993, hearing before the administrative law judge:

"ADMINISTRATIVE LAW JUDGE CALLIS: . . . Before going on the record, the parties have been engaged in extensive settlement negotiations. And my

inquiry to the parties is whether they have a settlement that they wish to present to the State Personnel Board. Mr. Stiles?

"MR. STILES [DDS counsel]: Your Honor, the State withdraws its notice of adverse action against Mr. Lars[o]n.

"MR. MOORE [Larson's counsel]: And the Appellant, at this point, also withdraws the notice of appeal.

"ADMINISTRATIVE LAW JUDGE CALLIS: All right. And under ordinary circumstances I suppose the State Personnel Board would not stand in the way of the parties to withdraw the notice of adverse action and the appeal respectively, which would [di]vest the Board of any jurisdiction in the matter.

"However, earlier this afternoon, the parties, upon my inquiry, advised me that they had intended to enter into a side agreement between the two parties, which they did not intend to submit to the State Personnel Board[,] provisions of which, in my view, would be in violation of a Board precedent decision, Pamela Martin precedent decision 91-03[3] and specifically would have contained a provision that would preclude the [disclosure of] circumstances . . . leading to the separation of Mr. [Larson] and the circumstances of the dismissal to other State Agencies in violation of that decision.

"And I advise the parties that under those circumstances I would not be in a position to recommend the approval of any settlement that they might enter into . . . with each other.

"Basically, as I understood the side agreement, after the withdrawal of the action and withdrawal of the appeal, Mr. Lars[o]n was intended to be placed in a period of two years in a non-patient care position here at the Porterville Developmental Center while he looked for other employment.

"If he was unsuccessful in securing other employment after two years, he would resign from Porterville Developmental Center. The charges and materials concerning the dismissal were going to be placed in a sealed file for this two[-]year period so that other agencies would not have access to this information when they were considering whether or not to hire Mr. Lars[o]n.

" . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3]Government Code section 19582.5 states in part: "The board may designate certain of its decisions as precedents. . . . All decisions designated as precedents shall be published in a manner determined by the board."

"MR. STILES: Your Honor, if I may, I believe that the sole issue before yourself as the representative of the Board at this time is whether or not the parties have the right . . . to withdraw the notice of adverse action and the appeal therefrom any further action by the Board.

"ADMINISTRATIVE LAW JUDGE CALLIS: All right. I understand what you're saying. I'm going to submit what you have told me to the Board. And I will prepare a proposed decision in which I describe what occurred and make a recommendation to the Board on what action they should take.

"Ultimately, it's the Board['s] decision on whether or not to permit you to withdraw the action or not. And I will make a proposed decision. The parties, if there's disagreement about what the Board does, they can certainly appeal it at that point."

■ As previously noted, in granting the peremptory writ of administrative mandamus, the lower court held "[t]he employee's withdrawal of this appeal on January 5th, 1993 deprived the State Personnel Board of any further jurisdiction, and for all purposes in the appeal, the Board acted officiously and in excess of jurisdiction when it rendered its decision in this matter . . . ."

In challenging the grant of administrative mandamus on appeal, the Board relies on Government Code section 18681, which states: "Whenever any matter is pending before the Personnel Board involving a dispute between one or more employees and an appointing power and the parties to such dispute agree upon a settlement or adjustment thereof, *the terms of such settlement or adjustment may be submitted to the board, and if approved by the board, the disposition of the matter in accordance with the terms of such adjustment or settlement shall become final and binding upon the parties.*" (Italics added.) The ordinary meaning of "shall" or "must" is of mandatory effect, while the ordinary meaning of "may" is purely permissive in character. (*California Teachers Assn. v. Governing Board* (1977) 70 Cal.App.3d 833, 842 [139 Cal.Rptr. 155].) The Board nevertheless contends:

"While the word 'may' customarily implies permissiveness, it can be considered mandatory where a public duty is involved. (*Mass v. Board of Education* (1964) 61 Cal.2d 612, 622-623 [39 Cal.Rptr. 739, 394 P.2d 579].) In such cases, 'may' means 'must.' (*Harless v. Carter* (1954) 42 Cal.2d 352, 356 [267 P.2d 4].) The overriding objective of statutory construction is to ascertain and effectuate legislative intent. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 208 [271 Cal.Rptr. 191, 793 P.2d 524].) Every word, phrase, and sentence in a statute should, if possible, be given significance. (*Peñasquitos,*

*Inc.* v. *Superior Court* (1991) 53 Cal.3d 1180, 1186 [283 Cal.Rptr. 135, 812 P.2d 154].) A court will not presume that the Legislature performs idle acts, nor will it construe statutory provisions so as to render them superfluous. (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 22 [276 Cal.Rptr. 303, 801 P.2d 1054].)

"In the instant case, section 18681 provides that the parties 'may' submit a settlement agreement to the Board. Viewed in isolation, this could mean that the parties were free to submit or not submit their agreement to the Board at their discretion. However, the clause that follows makes such an interpretation nonsensical because it explicitly states that those agreements that are approved by the Board 'shall become final and binding upon the parties.' The only reasonable interpretation of this language is that the only agreements which are 'final and binding upon the parties' are those that have been submitted to and approved by the Board. Settlements not so submitted and approved are not 'final and binding' and have no legal force and effect. Thus, parties to Board proceedings 'must' submit their settlements to the Board for approval if they want them to be 'final and binding.'

"A contrary interpretation would lead to the absurd result that the parties could have a 'final and binding' settlement whether or not they submitted the terms to the Board. If this were the case, no party would ever submit a settlement to the Board for approval and risk rejection. Such a result would undermine the purpose of the statute which is to provide Board supervision over the settlement agreements to ensure consistency with merit principles. The effect would be to render section 18681 nugatory since parties could avoid Board supervision by simply refusing to submit their agreements to the Board."

The Board further argues its interpretation is amply supported by the legislative history of Government Code section 18681 (Stats. 1945, ch. 56, § 3, p. 371). On April 18, 1945, then-Governor Warren's bill analyst recommended approval of the legislation, stating in relevant part: "This bill was jointly prepared by the Personnel Board, the Attorney General's office, and the California State Employees' Association. It facilitates existing procedure in two ways. In the first place, it provides for a disposition of disputes before the Personnel Board without the necessity of a complete hearing which the Attorney General has now stated cannot be done." At about the same time, Deputy Attorney General Robert E. Reed also recommended approval of the proposed legislation. Reed stated in a letter to the Governor: "There has always been considerable doubt as to the authority to adjust matters, particularly disciplinary matters pending before the State Personnel Board, with the result that many cases which could be adjusted to the satisfaction of all

parties, including the board, nevertheless have to be completely tried by the board and transcripts written up and passed on by the board in the same manner as if no adjustment were made. It is believed that in a great many instances a great deal of time, trouble and friction can be eliminated under the procedure authorized."

In view of this history, the Board contends "[t]he intent of Government Code section 18681 was therefore to provide the Board with authority to review and approve all settlements. Otherwise, all cases would need to be tried in the normal fashion and submitted to the Board for decision." Not so. The Board's argument and conclusion completely ignores changes in the constitutional and statutory procedures of the Board which have occurred through the years.

In 1934, the Board was created by constitutional amendment and "vested with all of the powers, duties, purposes, functions, and jurisdiction which are now or hereafter may be vested in any other State officer or agency under . . . any and all other laws relating to the State civil service as said laws may now exist or may hereafter be enacted, amended or repealed by the Legislature." Under the terms of this amendment, dismissals, demotions, suspensions, and other punitive action for or in the state civil service remained the duty of the Board and a vote of a majority of the members was required to make any action with respect thereto effective. In 1937, the Legislature enacted legislation to implement the constitutional provision. With respect to discipline, the legislation required the appointing power to file charges with the Board which, in turn, would hear and determine the matter. This procedure for imposing discipline was retained until 1949. In that year the Legislature adopted the disciplinary scheme which prevails today. Under this scheme, the appointing power has the authority to take disciplinary action subject to appeal to the Board. (Gov. Code, § 19574.) If the employee fails to request or to prosecute an appeal to the Board, then the appointing power's action is final. (Gov. Code, § 19575; *Department of Parks & Recreation* v. *State Personnel Bd., supra,* 233 Cal.App.3d at pp. 825-826.) Moreover, failure of either party (the employee, the employer, or their representatives) to proceed at the hearing shall be deemed a withdrawal of the action or appeal. (Gov. Code, § 19579.) These present rules of procedure are a part of and control the instant proceeding.

At the start of the January 5, 1993, administrative hearing, the appointing power, DDS, withdrew its notice of adverse action against employee Larson and Larson withdrew his notice of appeal. After advisement of these formal withdrawals, the administrative law judge inquired into the parties' motivation for these actions. The parties acknowledged they had been working on

an agreement. The administrative law judge then advised the parties "there is another Board decision out there . . . Haydee Serano [*sic*] . . . case number 26437 in which the Board takes the position that any settlement agreement which is not submitted to the Board and approved by the Board is not a final and binding agreement and has no legal effect." Counsel for DDS then advised the judge the *Serrano* case was not a precedential decision of the Board and the judge acknowledged the point. The judge nevertheless maintained the proposed settlement was violative of the *Pamela Martin* precedential decision (In re *Pamela Martin* (1991) S.P.B. Dec. No. 91-03) and added, "Ultimately, it's the Board['s] decision on whether or not to permit you to withdraw the action or not. And I will make a proposed decision."

The Board has not cited and we have been unable to find any authority conditioning withdrawal of an adverse action and/or appeal upon Board approval. The Board nevertheless contends article VII of the Constitution and the State Civil Service Act (Gov. Code, § 18570 et seq.) would be rendered useless if parties could unilaterally withdraw after invoking the Board's jurisdiction and, in its words, informing the Board of their intention to circumvent the civil service laws: "No parties would bother to come before the Board to have their settlements reviewed if they could otherwise do whatever they wished, without fear of rejection by the Board. Certainly, the Board can not enforce the civil service statutes or review disciplinary actions if parties are allowed to enter into settlement agreements that contravene the merit principles of the State civil service system."

However, DDS and Larson would be circumventing the civil service laws here only if Government Code section 18681 must be construed as the Board argues. In our view, it does not. Government Code section 18681 governs the presentation of settlement agreements to the Board and is couched in permissive language. Government Code section 19579 permits employees, employers, or their representatives to withdraw actions or appeals and does not expressly condition such withdrawals upon Board approval. Thus, a logical reading and construction of these statutes, singularly and in relation to each other, would seem to pose no bar to the procedure proposed by DDS and Larson in the instant case.

In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein. The judicial function is not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all. (Code Civ. Proc., § 1858.) Where possible, the goal of the courts is to achieve harmony between conflicting laws and avoid an interpretation which would

require that one statute be ignored. However, equally important are the familiar postulates that courts should give effect to the more recently enacted law and that a specific statute relating to a particular subject will govern over a general one. (*Schmidt* v. *Southern Cal. Rapid Transit Dist.* (1993) 14 Cal.App.4th 23, 27 [17 Cal.Rptr.2d 340].)

Given the permissive language of the settlement statute (Gov. Code, § 18681) and the more recent enactment of the withdrawal statute (Gov. Code, § 19579), we conclude the lower court quite properly held that the parties could withdraw from the Board hearing and "the Board acted officiously and in excess of jurisdiction when it rendered its decision in this matter . . . ." Nevertheless, the Board maintains "[t]he sanctioning of a withdrawal under the above-noted circumstances would contravene the purpose for which the constitutional amendment on civil service and the creation of a uniform single civil service system was created." However, where the language of a statute is clear and unambiguous, its meaning should generally be followed. Second-guessing the policy determination of the Legislature is an inappropriate task for a reviewing court. (*Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1226 [18 Cal.Rptr.2d 129, 848 P.2d 244].) In the instant case, the language of Government Code section 19579 clearly gave the parties "the legal right to withdraw by not proceeding."

Moreover, it seems to us the Board "doth protest too much," as Shakespeare once wrote.[4] Government Code section 18681 simply provides that whenever a matter *is pending* before the personnel board involving a dispute, and the parties agree upon a settlement, the parties may submit the proposed settlement to the Board and, if approved, the terms of the agreement become final and binding upon the parties. This section, as we interpret it, does not give employees and appointing powers carte blanche to do anything they wish regarding their dispute, as the Board suggests. To begin, the parties cannot do anything that is binding on anyone, unless they act in concert, i.e., both sides agree. If a legitimate dispute exists, one or the other, or both sides, must resort to the personnel board for a final resolution of the dispute and, if they reach a tentative agreement of the dispute, they must either submit the agreement to the Board for approval or *both* sides must withdraw from the proceedings; again, they must act in unison. If, however, both sides reach an agreement or resolution and wish to withdraw from further proceedings before the Board, as in the instant case, why should they be precluded from doing so? There is little difference here from a plaintiff and defendant who proceed to a judgment in the trial court, one or both parties proceed with an appeal, but before argument or submission, the plaintiff and

---

[4]Shakespeare, Hamlet, act III, scene 2, line 242.

defendant agree to settle their dispute and dismiss the appeal. Why, if the parties have settled their argument, should the courts force them to continue their appeal and waste time, money and judicial resources, unless the parties agree to let the appellate court decide if it agrees with the settlement? In our view, they should not, as we conclude here.

II.   *Did the Lower Court Erroneously Award Larson Attorney Fees?* *

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment granting peremptory writ of administrative mandamus is affirmed. The award of attorney fees pursuant to Government Code section 800 is reversed.

Larson is awarded costs of appeal.

Dibiaso, J., and Bissig, J.,† concurred.

---

*See footnote, *ante*, page 265.

†Judge of the Kings Superior Court sitting under assignment by the Chairperson of the Judicial Council.