TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1001 |
| of | : | |
| | : | February 25, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE BERNIE RICHTER, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1.      Does a school district have the authority to establish a school within the geographical and attendance boundaries of another school district?

2.      Does a school district have the authority to establish a charter school within the geographical and attendance boundaries of another school district?

3.      Would a school district be liable for the actions of a school established within its geographical and attendance boundaries by another school district ?

CONCLUSIONS

1.      A school district has the authority to establish a school within the geographical and attendance boundaries of another school district only if the school is located on a site immediately adjacent to a school site within the district's boundaries.

2.      A school district has the authority to establish a charter school within the geographical and attendance boundaries of another school district.

3.      A school district would not be liable for the actions of a school established within its geographical and attendance boundaries by another school district.

ANALYSIS

1.      Traditional Schools in Other Districts

The first inquiry is whether a school district may establish a school within the geographical boundaries of another district. We conclude that it may under narrowly defined conditions.

Section 5 of article IX of the Constitution provides: "The Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established." Section 14 of the same article states:

"The Legislature shall have the power, by general law, to provide for the incorporation and organization of school districts. . . .

"The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established."

Pursuant to this constitutional grant of authority, the Legislature has enacted section 35160 of the Education Code **Footnote No. 1** as follows:

"On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."

Section 35160.1 additionally provides:

"(a) The Legislature finds and declares that school districts . . . have diverse needs unique to their individual communities and programs. Moreover, in addressing their needs, common as well as unique, school districts . . . should have the flexibility to create their own unique solutions.

"(b) In enacting section 35160, it is the intent of the Legislature to give school districts . . . broad authority to carry on activities and programs, including the expenditure of funds for programs and activities which, in the determination of the governing board of the school district . . . are necessary or desirable in meeting their needs and are not inconsistent with the purposes for which the funds were appropriated. It is the intent of the Legislature that Section 35160 be liberally construed to effect this objective.

"(c) The Legislature further declares that the adoption of this section is a clarification of existing law under Section 35160."

Accordingly, while prior to January 1, 1976, we were required to search for express or implied authorization for a school district program, we now look to whether a particular activity is precluded by any law. (73 Ops.Cal.Atty.Gen. 84, 86 (1990).) If a district's program or activity is neither in conflict nor inconsistent with any provision of law, it is permitted.

Prior to January 1, 1988, section 37100 provided as follows:

"Whenever the governing board of a school district is unable to maintain the school or schools in the district because of its inability to secure a teacher or teachers, or because of lack of facilities, the board may maintain the school or schools of the district elsewhere than within the district. . . ."

Effective January 1, 1988, section 37100 was repealed. (Stats. 1987, ch. 1452, § 216.) However, the Legislature declared with respect to its repeal, as well as the repeal of other sections of the Education Code:

"The Legislature finds and declares that, in 1972, the people of the state adopted an amendment to Section 14 of Article IX of the California Constitution, which permits the Legislature to authorize the governing boards of school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established.

"It is the intent of the Legislature, in enacting this act, to implement more fully, for the school districts . . . in California, the intent of the people in adopting the amendment of Section 14 of Article IX of the California Constitution. The Legislature further finds and declares that, in order to do so, it is necessary to amend or repeal many provisions of the Education Code.

"*Whenever in this act a power, authorization, or duty of a school district governing board . . . is repealed . . , it is not the intent of the Legislature to prohibit the board . . . from acting as prescribed by the deleted provisions.* Rather, it is the intent of the Legislature, that the school district governing boards...shall have the power, *in the absence of other legislation*, to so act under the general authority of Section 35160 of the Education Code." (Stats. 1987, ch. 1452, § 1; italics added.)

Thus, while it was not the Legislature's intent to prohibit a school district from acting as prescribed in a repealed provision such as section 37100 (see 73 Ops.Cal.Atty.Gen. 183, 187-188 (1990)), and notwithstanding the rule of liberal construction (§ 35160.1, subd. (b)), it remains clear that a school district may act only "in the absence of other [conflicting] legislation."

In addition to the grant of general authority contained in section 35160, the Legislature enacted section 35271, subdivision (a), operative June 30, 1993, as follows:

"The governing board of any school district may acquire property, construct buildings, and maintain classes outside its boundaries on sites immediately adjacent to school sites of the district within its boundaries."

While section 35160 provides that a school district may act in any manner "which is not in conflict with or inconsistent with . . . any law," does section 35271 contain a limitation that supersedes the general authority of the former statute?

In examining the language of section 35271, we follow established principles of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent. [Citation.]" (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "Every word, phrase, and sentence in a statute should, if possible, be given significance. [Citation.]" (*Larson* v. *State Personnel Bd.* (1994) 28 Cal.App.4th 265, 276-277.) Moreover, we note that with respect to a statutory grant of authority, there is an implied negative: no power may be exercised which is in excess of the granted authority. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196; 79 Ops.Cal.Atty.Gen. 128, 129 (1996); see, e.g., *Huntington Park Redevelopment Agency* v. *Martin* (1985) 38 Cal.3d 100, 105.)

Here, section 35271 contains both a specific grant of authority as well as a specific limitation upon the grant of authority. It authorizes a school district to "acquire property, construct buildings, and maintain classes outside its boundaries . . . ." Included within this authorization are all of the elements necessary for the establishment of a school. By way of limitation, however, the district may do so ". . . on sites immediately adjacent to school sites of the district within its boundaries." The implied negative is that a school district may not establish a school outside its boundaries on a site not immediately adjacent to a school site within its boundaries. **Footnote No. 2** To do so would be in conflict and inconsistent with section 35271 and therefore unauthorized.

We conclude that a school district may establish a school within the boundary of another district only if it is located upon a site immediately adjacent to a school site within the district.

2.      Charter Schools in Other Districts

The second inquiry is whether our analysis would differ if the school to be established within the boundaries of another district were a charter school. In other words, would the extraterritorial establishment by a school district of a charter school be subject to the site limitation contained in section 35271? We conclude that the statutory limitation would be inapplicable.

The legislative purposes in enacting the Charter Schools Act of 1992 (§§ 47600-47616; "Act"), authorizing the operation of charter schools throughout the state, are set forth in section 47601 as follows:

"It is the intent of the Legislature, in enacting this part, to provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently from the existing school district structure, as a method to accomplish all of the following:

"(a) Improve pupil learning.

"(b) Increase learning opportunities for all pupils, with special emphasis on expanding learning experiences for pupils who are identified as academically low achieving.

"(c) Encourage the use of different and innovative teaching methods.

"(d) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site.

"(e) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system.

"(f) Hold the schools established under this part accountable for meeting measurable pupil outcomes, and provide the schools with a method to change from rule-based to performance-based accountability systems."

The Act provides for the establishment of a charter school by filing a petition, specifications to be contained in a proposed charter, review and approval or denial by the district governing board, and grounds for revocation of a charter. (See 80 Ops.Cal.Atty.Gen. 52, 54 (1997); 78 Ops.Cal.Atty.Gen. 253, 254-255 (1995).) With respect to a charter school's general operations, section 47610 states that a charter school "shall comply with all of the provisions set forth in its charter petition, but is otherwise exempt from the laws governing school districts . . ." with specified exceptions not pertinent to this examination. (See 78 Ops.Cal.Atty.Gen. 297, 300 (1995).)

In 80 Ops.Cal.Atty.Gen., *supra*, 54-56, for example, we determined that a charter school would be exempt from the Field Act, which generally governs school districts in the design and construction of school buildings. **Footnote No. 3** Similarly, here, a charter school would be exempt from the limitations inherent in section 35271. It is noted in this regard that admission to a charter school may not be determined by the student's place of residence within the state, nor may any student enrolled in the school district be required to attend a charter school. (§ 47605, subds. (d), (f); 78 Ops.Cal.Atty.Gen., *supra*, 254-255.) These provisions are consistent with our determination that a charter school is not subject to the same constraint as to location as is a traditional school.

Accordingly, we conclude that a charter school, unless constrained by the terms of its charter, may be established within the geographical boundaries of another school district.

3.      Liability for Schools of Another District

The final inquiry is whether a school district would be liable for the actions of a school established within its boundaries by another school district. We conclude that it would not be liable in such circumstances.

While a school district is generally defined by its geographical boundaries, which forms the basis for the inquiries herein, the boundaries are jurisdictional and not proprietary. Thus, a school district may be liable for the actions of its employees during a course of duty, or for injuries caused by dangerous conditions upon the property where its facilities are situated or over which it has control, but it would not be liable for the actions of the employees of another district or for injuries sustained upon property not subject to its control. (See, e.g., Gov. Code, § 835; *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799; *Bartell* v. *Palos Verdes Penisula Sch. Dist.* (1978) 83 Cal.App.3d 492.)

We conclude that a school district would not be liable for the actions of a school established within its geographical attendance boundaries by another district.

\* \* \* \* \*

---

**Footnote No. 1**
Unidentified section references hereafter are to the Education Code.
**Footnote No. 2**
Whether the State Board of Education may waive the requirements of section 35271 in a particular case (see § 33050) is beyond the scope of this opinion.
**Footnote No. 3**
As noted in our recent opinion, the Field Act construction requirements would be applicable to a charter school if they were set forth in its charter petition. (*Id.*, at p. 55.)

---