[No. C039686. Third Dist. Jan. 30, 2003.]

STEVE WESTLY, as Controller, etc., Plaintiff and Appellant, v. CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM BOARD OF ADMINISTRATION et al., Defendants and Appellants.

COUNSEL

Remcho, Johansen & Purcell, Joseph Remcho, Robin B. Johansen, James C. Harrison, Miguel Marquez; Strumwasser & Woocher, Fredric D. Woocher and Michael J. Strumwasser for Plaintiff and Appellant.

Jones, Day, Reavis & Pogue, Elwood Lui, Jeffrey A. LeVee, Peter G. McAllen, Emma Killick; Jones, Day, Reavis & Pogue, Stephen J. Goodman; and Peter Mixon for Defendants and Appellants.

Kathy M. Katano-Lee for Alameda County Employees' Retirement Association as Amici Curiae on behalf of Defendants and Appellants.

Steefel Levitt & Weiss, Harvey L. Leiderman, Ashley K. Dunning for Board of Retirement of Orange County Employees' Retirement System as Amici Curiae on behalf of Defendants and Appellants.

Christopher W. Waddell for California State Teachers' Retirement System as Amici Curiae on behalf of Defendants and Appellants.

## OPINION

**BLEASE, Acting P. J.**—At issue is the meaning of the provision of article XVI, section 17 of the California Constitution (Article XVI, section 17), that grants the Board of Administration (the Board) of the California Public Employees' Retirement System (CalPERS) "plenary authority . . . for . . . administration of the system . . . ."

Article XVI, section 17 provides in pertinent part: "Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to all of the following: . . . ."

The state Controller,[1] challenges the Board's[2] assertion of plenary authority to exempt its employees from civil service, to bypass the Controller's duty to issue warrants for the pay of employees, and to issue stipends, salaries, and other payments in excess of the amounts permitted by the Government Code.[3]

The trial court granted the Controller's motion for judgment on the pleadings on all but the sixth cause of action, which challenges the Board's authority to exempt its portfolio managers from the civil service provisions of the California Constitution.

We will affirm the judgment with the exception that, unlike the trial court, we find the Controller has standing to raise the sixth cause of action because the Controller has the right to issue warrants and audit payments to ensure an expenditure is authorized by law.

The primary purposes of Article XVI, section 17 are to grant retirement boards the sole and exclusive power over the management and investment

---

[1] By reason of an election held in November 2002, as of January 1, 2003, Kathleen Connell was replaced as Controller by Steve Westly.

[2] Also named as defendants were James E. Burton, the chief executive officer of CalPERS, and three members of the Board, Robert F. Carlson, Mike Quevedo, Jr., and William B. Rosenberg. We shall refer to them collectively as the Board.

[3] A reference to a section is to the Government Code unless otherwise designated or apparent from the context.

of public pension funds and to ensure that the assets of public pension systems are used to provide benefits and services to participants efficiently and promptly. The authority claimed by the Board is not within these purposes.[4]

We conclude the Board does not have plenary authority to evade the law that limits the pay of the Board and its employees, that specifies the employees exempt from civil service, and that authorizes the Controller to issue warrants and audit their legality.

### FACTUAL AND PROCEDURAL BACKGROUND

The voters enacted the challenged provision as an amendment to Article XVI, section 17, in 1992. The backdrop against which the amendment was enacted involved actions by the Governor and Legislature to balance the state budget by limiting or delaying the state's employer contributions to CalPERS.

For example, in 1982 legislation was enacted to bar the state from making a contribution for a portion of that year and to require the shortfall to be made up from the CalPERS reserve against deficiencies. (*Claypool v. Wilson* (1992) 4 Cal.App.4th 646, 655 [6 Cal.Rptr.2d 77].) Until 1990, the state paid employer contributions on a monthly basis. (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1119 [61 Cal.Rptr.2d 207].) In 1990, the Legislature changed the payment schedule from monthly to quarterly. In 1991, the Legislature temporarily changed the payment schedule from quarterly to semiannually. In 1992 legislation "changed the schedule to 'semiannually, six months in arrears.' Legislation in 1993 changed the schedule to 'annually, 12 months in arrears.' " (*Id.* at p. 1117.) In 1991, legislation was passed to repeal statutes providing for cost of living benefits to retirees, and to use these funds to meet the state's employer contribution requirement. (*Claypool v. Wilson, supra,* at pp. 657-658.) Also in 1991, legislation was passed transferring the actuarial function to the Governor. (*Id.* at p. 658.)

Under the California Pension Protection Act of 1992 (enacted by passage of Proposition 162), Article XVI, section 17 was amended to grant retirement boards[5] "plenary authority and fiduciary responsibility for

---

[4]We have no occasion to consider the application of Article XVI, section 17 to any other issue.

[5]Article XVI, section 17 applies not only to the Board but also to other retirement boards in the state.

investment of moneys and administration of the system. . . ."[6] The amendment is subject to the subdivisions which follow and the law, as

---

[6]The amendment adds in pertinent part, in italics, as follows:

"Notwithstanding *any other* provisions *of law or this Constitution* to the contrary, *the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for* investment of moneys *and administration* of *the* system, subject to all of the following:

"(a) *The retirement board of a public pension or retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. The retirement board shall also have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries.* The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.

"(b) The *members of the retirement board* of a public pension or retirement system shall discharge *their* duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system. *A retirement board's duty to its participants and their beneficiaries shall take precedence over any other duty.*

"(c) The *members of the retirement board* of a public pension or retirement system shall discharge *their* duties with respect to the system with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of a like character and with like aims.

"(d) The *members of the retirement board* of a public pension or retirement system shall diversify the investments of the system so as to minimize the risk of loss and to maximize the rate of return, unless under the circumstances it is clearly not *prudent* to do so.

"(e) *The retirement board of a public pension or retirement system, consistent with the exclusive fiduciary responsibilities vested in it, shall have the sole and exclusive power to provide for actuarial services in order to assure the competency of the assets of the public pension or retirement system.*

"(f) *With regard to the retirement board of a public pension or retirement system which includes in its composition elected employee members, the number, terms, and method of selection or removal of members of the retirement board which were required by law or otherwise in effect on July 1, 1991, shall not be changed, amended, or modified by the Legislature unless the change, amendment, or modification enacted by the Legislature is ratified by a majority vote of the electors of the jurisdiction in which the participants of the system are or were, prior to retirement, employed.*

"(g) *The Legislature may by statute continue to prohibit certain investments by a retirement board where it is in the public interest to do so, and provided that the prohibition satisfies the standards of fiduciary care and loyalty required of a retirement board pursuant to this section.*

"(h) *As used in this section, the term 'retirement board' shall mean the board of administration, board of trustees, board of directors, or other governing body or board of a public employees' pension or retirement system; provided, however, that the term 'retirement board' shall not be interpreted to mean or include a governing body or board created after July 1, 1991 which does not administer pension or retirement benefits, or the elected legislative body of a jurisdiction which employs participants in a public employees' pension or retirement system.*"

(Cal. Const., art. XVI, § 17; see also Ballot Pamp., Gen. Elec. (Nov. 3, 1992) text of Prop. 162, pp. 70-71 (Ballot Pamphlet).)

enacted, to a statement of "Purpose and Intent"[7] and to "Findings and Declarations."[8]

Claiming plenary authority under Article XVI, section 17, the Board engaged in a series of administrative actions that conflict with constitutional and statutory authority.

---

[7]In pertinent part, the declaration of purpose is as follows:

" 'Section Three. Purpose and Intent. The People of the State of California hereby declare that their purpose and intent in enacting this measure is as follows:

" '(a) To protect pension funds so that retirees and employees will continue to be able to enjoy a basic level of dignity and security in their retirement years.

" '(b) To give voters the right to approve changes in the composition of retirement boards containing elected retirees or employee members.

" '(c) To protect the taxpayers of this state against future tax increases which will be required if state and local politicians are permitted to divert public pension funds to other uses.

" '(d) To ensure that the assets of public pension systems are used exclusively for the purpose of efficiently and promptly providing benefits and services to participants of these systems, and not for other purposes.

" '(e) To give the sole and exclusive power over the management and investment of public pension funds to the retirement boards elected or appointed for that purpose, to strictly limit the Legislature's power over such funds, and to prohibit the Governor or any executive or legislative body of any political subdivision of this state from tampering with public pension funds.

" '(f) To ensure that all actuarial determinations necessary to safeguard the competency of public pension funds are made under the sole and exclusive direction of the responsible retirement boards.

" '(g) To affirm the legal principle that a retirement board's duty to its participants and their beneficiaries takes precedence over any other duty.' " (See Historical Notes, 3 West's Ann. Const. (1996 ed.) foll. Art. XVI, § 17, p. 114.)

[8]In pertinent part, the findings provide:

" 'Section Two. Findings and Declarations. The People of the State of California hereby find and declare as follows: [¶] . . . [¶]

" '(c) Politicians have undermined the dignity and security of all citizens who depend on pension benefits for their retirement by repeatedly raiding their pension funds.

" '(d) Political meddling has driven the federal Social Security system to the brink of bankruptcy. To protect the financial security of retired Californians, politicians must be prevented from meddling in or looting pension funds.

" '(e) Raids by politicians on public pension funds will burden taxpayers with massive tax increases in the future.

" '(f) To protect pension systems, retirement board trustees must be free from political meddling and intimidation.

" '(g) The integrity of our public pension systems demands that safeguards be instituted to prevent political "packing" of retirement boards, and encroachment upon the sole and exclusive fiduciary powers or infringement upon the actuarial duties of those retirement boards.

" '(h) In order to protect pension benefits and to avoid the prospect of higher taxes, the People must act now to shield the pension funds of this state from abuse, plunder and political corruption.' " (See Historical Notes, 3 West's Ann. Const., *supra*, foll. Art. XVI, § 17, p. 114.)

Contrary to article VII, section 4 of the California Constitution, which limits the employees exempt from civil service to one deputy or employee selected by the Board, and contrary to section 20208, which classifies personnel with investment expertise as civil service employees, the Board exempted at least 10 portfolio managers from civil service. Contrary to California Constitution, article XVI, section 7, and the uniform payroll provisions of section 12470, the Board issued its own warrants for the pay of its portfolio managers. Contrary to section 20091, which limits the compensation of Board members for attendance at Board meetings to $100, the Board increased the compensation to $400 per meeting. Contrary to section 19820, subdivision (a), which limits travel reimbursements for Board members and employees, as determined by the Department of Personnel Administration (DPA), the Board adopted an expense reimbursement policy that exceeded its amounts. Contrary to section 20092, which limits the amount the Board may reimburse a member's employing agency (known as "release time" reimbursements) to 25 percent of the member's annual compensation, the Board increased the reimbursement rates beyond 25 percent.

Article VII, section 1 of the California Constitution provides that every employee of the state is a civil service employee, unless exempted. Section 4 exempts one deputy or employee selected by each board or commission. Contrary to these provisions, and section 20208, the Board classified at least 10 portfolio managers as exempt from the civil service system. Contrary to section 19826, which directs the DPA to establish salary ranges for civil service classifications, the Board set the salaries for its portfolio managers at an amount in excess of that approved by the DPA.

Finally, in order to pay its portfolio managers increased salaries in the face of the DPA's and the Controller's refusals to process the increases, the Board developed its own payroll system by which it paid the managers directly from the retirement system trust funds. This action was contrary to article XVI, section 7 of the California Constitution, which provides the Controller must issue all warrants for money drawn from the state treasury, and section 12470, which directs the Controller to operate a uniform payroll system for all state agencies.

The Controller filed this declaratory and injunctive relief action. The Board demurred to the sixth cause of action which challenged the Board's exemption of its portfolio managers from civil service on the ground the Controller has no standing to raise the issue. The trial court sustained the Board's demurrer to the sixth cause of action without leave to amend. The Controller cross-appeals from the judgment of the trial court that dismisses this cause of action.

The Controller moved for judgment on the pleadings on the remaining causes of action. The trial court granted the motion and entered judgment in the Controller's favor. The trial court's ruling states in part that "the existing case law and the background materials, particularly the ballot arguments, clearly indicate that the voters had intended to stop the raiding of the pension funds, not to grant the defendants unlimited authority to ignore state laws governing state employees."

This appeal followed.[9]

## DISCUSSION

## I

### Standing to Raise the Sixth Cause of Action

▪ We first consider the Controller's standing to raise the issues tendered in the sixth cause of action.

#### A. The Issues

In the sixth cause of action the Controller alleges the Board's classification of 10 portfolio managers as employees exempt from civil service, violates article VII, section 4 of the California Constitution and the state civil service laws (§ 18500 et seq).

The complaint requests a declaration of the Controller's rights and duties without being subject to liability. The Controller asserts liability could attach for failing to superintend the fiscal concerns of the state, failing to audit disbursements from the treasury for correctness and legality (§ 12410), failing to ensure warrants for payment are authorized by law (Cal. Const., art. XVI, § 7; § 12470), failing to audit all claims before drawing a warrant (§ 925.6, subd. (a)), failing to abolish vacant civil service positions (§ 12439), and failing to verify that payments of salary to civil servants are proper (§ 19764).

The trial court ruled the Controller had no standing to assert the sixth cause of action because the Controller's authority is limited to the fiscal governance of the state and no facts were alleged sufficient to establish authority over the civil service classification of the Board's employees. We disagree.

---

[9]Appellants filed a petition for writ of supersedeas which we treated as a motion for stay pending appeal, and on that basis granted the motion.

## B. *Allegations of Fact*

The Controller alleged the Board voted to reclassify its portfolio managers as employees exempt from civil service, increase their salaries in excess of the salary range set by the DPA, and pay them directly from the retirement fund in the state treasury without approval by the DPA or the Controller.[10]

The Board's action arose in the following way. The DPA refused to approve the Board's increase in salaries and refused to issue a pay letter to the Controller. In response CalPERS delivered its own pay letter to the Controller, requesting an increase in the salary range for the portfolio managers on the basis it had plenary authority under Article XVI, section 17 to take this action. The Controller refused to honor the pay letter because it was not approved by the DPA. CalPERS then informed the Controller it had developed its own payroll system and would directly pay the salaries of portfolio managers from the retirement fund in excess of those authorized by their civil service classification.

## C. *The Controller's Litigation Authority*

Section 11180 provides: "The head of each department may . . . prosecute actions concerning: [¶] (a) All matters relating to the business activities and subjects under the jurisdiction of the department [and] [¶] (b) Violations of any law or rule or order of the department."

The Office of State Controller is a state department and the Controller is the head of the department. (§ 12405.) The thrust of the present action, including the sixth cause of action, concerns the Controller's authority to issue warrants for the pay of state employees, to audit and determine the legality of any claim regarding such pay, including exemption from the civil service laws, and to oversee the uniform payroll system established pursuant to section 12470.

The Constitution provides: "Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn

---

[10]DPA establishes salary ranges for each class of civil service positions and administers salaries of exempt employees. (Respectively, §§ 19826, 19816.) In *Lowe v. California Resources Agency* (1991) 1 Cal.App.4th 1140, 1146 [2 Cal.Rptr.2d 558] (*Lowe*), this court said the DPA has "exclusive jurisdiction to classify positions in the state civil service." CalPERS argues this prevents the Controller from challenging its expenditures because the Controller has no authority to classify employees as civil service. We disagree.

*Lowe* concerns the classification of positions within the civil service, not the right to a determination whether positions *are* civil service positions. (See *Stockton v. Department of Employment* (1944) 25 Cal.2d 264, 272 [153 P.2d 741], upon which *Lowe* relies.)

warrant." (Cal. Const., art. XVI, § 7.) The state Treasury contains the Public Employees' Retirement Fund to which state public retirement money must be credited. (§ 20170.) Accordingly, money may be drawn on the retirement fund only by a warrant issued by the Controller.

The statutory jurisdiction of the Controller is set forth in articles 2 through 5 of title 2, division 3, part 2, chapter 5 of the Government Code (§ 12410 et seq.). These articles vest the Controller with the responsibility to audit and make payments from the state treasury and to operate a uniform state payroll system for all state agencies.

The Controller is required to audit all claims against the state and all claims for the disbursement of any state money for their correctness, and to determine whether the law supports payment. (§ 12410.)[11] The Controller must abolish civil service positions that are vacant for six consecutive months. (§ 12439.) The Controller must operate a uniform state payroll system for all state agencies, except the University of California and the California State Fair. (§ 12470.)[12] The Public Retirement System is an agency of the state and subject to section 12470 because it is a unit of the State and Consumer Services Agency. (§§ 20002, 12800, 12804.)

"That the Controller has the power, indeed the duty, to ensure that the decisions of an agency that affect expenditures are within the fundamental jurisdiction of the agency is clear." (*Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317, 1335 [26 Cal.Rptr.2d 666].) "[W]ith respect to the Controller's duties the Legislature has specifically provided that 'a warrant shall not be drawn unless authorized by law . . . .' (§ 12440.) An attempt by an administrative agency to exercise control over matters which the Legislature has not seen fit to delegate to it is not authorized by law and in such case the agency's actions can have no force or effect." (*Ibid.*)

There is no question the Controller has authority to prevent the payment of persons employed by state agencies in violation of the civil service system. In both *Stockburger v. Riley* (1937) 21 Cal.App.2d 165 [68 P.2d

---

[11]Section 12410 provides in pertinent part: "The Controller shall superintend the fiscal concerns of the state. The Controller shall audit all claims against the state, and may audit the disbursement of any state money, for correctness, legality, and for sufficient provisions of law for payment."

In part V of the Discussion we consider the Board's claim the retirement fund is not "state money."

[12]Section 12470 provides in pertinent part that "the Controller shall install and operate a uniform state payroll system for all state agencies except the California Exposition and State Fair and the University of California."

741],[13] and *State Compensation Insurance Fund v. Riley* (1937) 9 Cal.2d 126 [69 P.2d 985, 111 A.L.R. 1503], the courts upheld the Controller's refusal to pay independent contractors because they were not within the civil service. In *Treu v. Kirkwood* (1954) 42 Cal.2d 602 [268 P.2d 482], the court upheld the Controller's refusal to pay overtime to an employee exempt from civil service.

Normally, the Controller asserts authority over the civil service system by refusing to authorize payment to the person employed in violation of the civil service laws. The Controller's authority to enforce these laws is no less, however, when a state agency attempts to do indirectly what it cannot do directly.

The issue tendered is whether a state agency may bypass the Controller's authority to issue warrants and audit and pay the employees of the state through a uniform payroll system by claiming the employees are not civil service employees and by setting up its own payroll system. The Controller asks the courts to determine the responsibilities intrinsic to his authority to issue and audit employee payments.

By bringing this action in declaratory relief, the Controller seeks not to infringe on the jurisdiction of the DPA to enforce the civil service statutes, but to enforce the Controller's authority to audit the disbursement of any state money for its legality and correctness.

The Board cites *Tirapelle v. Davis, supra,* 20 Cal.App.4th 1317, as authority for the argument the Controller has no standing to challenge the classification of a state employee as a civil service employee. The Board misreads *Tirapelle.*

*Tirapelle* concerned a mandate proceeding to review the Controller's refusal to implement salary reductions established by the DPA for employees exempt from civil service. As appropriate to a mandate proceeding, the court held the Controller has both ministerial and discretionary authority. The Controller has ministerial authority when the amount of an expenditure is set by law or entrusted to the discretion of another agency. (*Tirapelle v. Davis, supra,* 20 Cal.App.4th at p. 1329.) The Controller has discretionary authority when the facts must be determined as necessary to establish the validity of a claim. (*Ibid.*)

*Tirapelle* held the Controller had ministerial authority over an award of salary because the "power of approval and the administration of salaries of

---

[13]Overruled on other grounds in *California State Employees' Assn. v. State of California* (1988) 199 Cal.App.3d 840, 851 [245 Cal.Rptr. 232].

exempt employees" was vested in the DPA. (*Tirapelle v. Davis, supra*, 20 Cal.App.4th at p. 1339.) Since the Controller could point to no law authorizing the payment of higher salaries, it was not authorized to fix those salaries at a higher level. (*Id.* at p. 1332.)

However, *Tirapelle* also said, "Our decision is without prejudice to the right of the Controller, in the exercise of his statutory duties . . . to determine whether the DPA lacked fundamental authority with respect to any specific salary claim." (*Tirapelle v. Davis, supra*, 20 Cal.App.4th at p. 1341.) The court thus recognized the Controller's right to determine whether the DPA has authority to set the salary ranges for civil service employees and, incident to that determination, the right to determine whether the Board may exempt its employees from the civil service provisions of the state Constitution. (§ 19826.)

In the present case, there is no law that grants the Board the right to set the salaries of its portfolio managers except for its interpretation of Article XVI, section 17, the very provision at issue in this case. Rather, the Board is directed by statute to classify its employees who possess investment expertise as civil service employees. It may contract outside of state service only for "necessary investment expertise" upon the approval of the DPA, if the expertise "is not available within existing civil service classifications . . . ." (§ 20208.) The portfolio managers are employees who possess investment expertise and for that reason are within the civil service.

This action, including the sixth cause of action, is fundamentally about the Controller's right to determine whether the Board's actions comply with the law. Just as there was no question the Controller would have had standing to litigate the Controller's authority and the DPA's authority in *Tirapelle*, had it initiated the action, there is no question the Controller has standing to litigate the authority of the Board to exempt its employees from civil service, to bypass the Controller's authority to issue warrants and otherwise to exempt its actions from the Controller's review of the legality of any payment from the Treasury.

The complaint sought declaratory relief to resolve the disputed issue whether the CalPERS employees are within the civil service. A declaratory judgment properly may be sought as a prophylactic measure to resolve a dispute. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 898 [123 Cal.Rptr.2d 432, 51 P.3d 297].) That includes the civil service status of the Board's portfolio managers.

The trial court erred in sustaining the Board's demurrer to the Controller's sixth cause of action.

## II

### *The Plenary Authority of the Board*

The Board claims the "plenary authority" that Article XVI, section 17 grants it over the "administration of the system" includes the exclusive power to set the salaries of its employees, to determine their civil service status, to determine the amount to reimburse its members and its members' employers, and to pay its employees without a warrant from or the review of the Controller. We disagree.

### A.

### *Conflict with Statutes*

The Board claims Article XVI, section 17 conflicts with and, as the paramount law, supersedes statutes that inter alia authorize the DPA to adopt classes and salary ranges for each position within state civil service (§ 18800), that limit the pay of the Board's members for attending meetings (§ 20091), and that limit the amount a Board member's employing agency may be reimbursed for the time each member spends carrying out his or her duties as a Board member (§ 20092). The claim presents a question of constitutional law involving the construction of Article XVI, section 17.

The rules of statutory construction are the same for initiative enactments as for legislative enactments. (*Williams v. Superior Court* (2001) 92 Cal.App.4th 612, 622 [111 Cal.Rptr.2d 918].) The goal is to determine and effectuate voter intent. (*Ibid.*) To do this we interpret the phrase "administration of the system" in Article XVI, section 17, within the context of the subsequent conditions and the statement of purposes and intent and findings which are a part of its enactment.

We are directed to look to the language of the enactment first, giving the words their usual and ordinary meaning. (*Williams v. Superior Court, supra,* 92 Cal.App.4th at p. 623.) Only if the statutory language is susceptible of more than one reasonable interpretation do we resort to extrinsic evidence to determine the intent of the voters. (*Ibid.*) We start with the language of Article XVI, section 17. The Board is granted "plenary authority" over the "administration of the system" in the initial paragraph of the amendments to Article XVI, section 17. (See fn. 6, *ante.*) The paragraph is made "subject to all" of the subdivisions that follow. The subdivisions serve to limit and define the authority and responsibility granted in the initial paragraph.

In Article XVI, section 17, subdivision (a), the analogous phrase "administer the system" appears. It provides the board "shall . . . have sole and exclusive responsibility to *administer the system* in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries." (Italics added.) It is preceded by a provision granting to the Board "the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. . . ." In this context, the "plenary authority" that is granted over the "administration of the system" goes to the management of the assets and their delivery to members and beneficiaries of the system, not the remuneration of those who administer it.

By contrast, Article XVI, section 17, subdivision (f) concerns the powers of the Board. It provides the Legislature may not modify the "number, terms, and method of selection or removal of members of the retirement board . . . ." It says nothing about the remuneration of the Board or its employees. The retirement board also is given exclusive power over actuarial services in subdivision (e). "The retirement board of a public pension or retirement system . . . shall have the sole and exclusive power to provide for actuarial services . . . ." The remaining subdivisions concern the Board's discharge of its duty to efficiently manage its assets and to provide benefits to its members.

Thus, with regard to administration of the system, the Board's authority is limited to actuarial services and to the protection and delivery of the assets, benefits, and services for which the Board has a fiduciary responsibility. No such power is given over the administration of the matters at issue here.

The initiative by which the amendments to Article XVI, section 17 were enacted contains a statement of purpose and intent and declarations and findings. (See fns. 6, 7 & 8, *ante*.)

The express "purpose and intent" of the amendments to Article XVI, section 17, as set forth in Section Three of the initiative (fn. 7, *ante*), is to " 'give the sole and exclusive power over the management and investment of public pension *funds* to the retirement board's selected or appointed for that purpose, to strictly limit the Legislature's power over such *funds*, and to prohibit the Governor or any executive or legislative body of any political subdivision of this state from tampering with public pension *funds*.' " (See fn. 7, *ante*, italics added.)

The remaining declarations of purpose reinforce the intent of the measure to protect pension *funds* by giving pension boards the authority to administer the funds without interference. Thus, the measure expresses the intent to "protect pension funds," to protect against tax increases that would result

"if state and local politicians are permitted to divert public pension funds" and to "ensure that the assets of public pension systems are used exclusively for the purpose of . . . providing benefits and services to the participants of these systems . . . ." (See fn. 7, *ante*.)

Similarly, five of the eight "[f]indings and [d]eclarations," set forth in Section Two of the initiative (fn. 8, *ante*), are concerned with the specter of the political looting of pension funds. (See fn. 8, *ante*.) The three remaining findings concern the selection of a retirement board encroachment on the fiduciary powers, and infringement on the actuarial function. Article XVI, section 17 specifically addresses two of the these matters. (Art. XVI, § 17, subds. (e) and (f).)

In keeping with the foregoing, the thrust of the ballot arguments in favor of Article XVI, section 17 is to prevent the Legislature from "raiding" pension funds. The ballot pamphlet summary states the measure grants the "boards of public employee retirement systems sole authority over investments and administration, including actuarial services." (Ballot Pamp., Gen. Elec., *supra*, summary of Prop. 162, p. 6.) The summary argument in favor states that Article XVI, section 17 would "stop politicians from raiding the pensions of . . . public employees." (Ballot Pamp., *supra*, argument in favor of Prop. 162, p. 38.) The claims address the means by which the Legislature on previous occasions had altered its contributions to the retirement system.

The full argument in favor of the initiative warns that politicians would continue to raid the pension funds of retirees unless Article XVI, section 17 was passed. It complains it was "not right" to allow politicians to "balance their budgets on the backs of seniors and retirees." (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 162, p. 6.) The argument makes no mention of the scope of a retirement board's administrative authority.

The ballot argument against Article XVI, section 17 claims the Controller has blocked the pay increase of a "bureaucrat," but would not have the authority to "stop other outrageous salary hikes if Proposition 162 [became] law." (Ballot Pamp., Gen. Elec., *supra*, argument against Prop. 162, p. 39.) The rebuttal argument states the proposition's opponents are "trying to mislead the voters." "The central purpose of this measure is to STOP POLITICIANS FROM USING PUBLIC PENSION FUNDS TO BAIL THEM OUT WHEN THEY FAIL TO KEEP GOVERNMENT SPENDING UNDER CONTROL." (*Id.*, rebuttal to argument against Prop. 162, p. 39, original capitalization.)

The Legislative Analyst gives slightly more attention to the issue of a retirement board's administrative authority under Article XVI, section 17. It

recognizes that prior to Article XVI, section 17, the Constitution specified the general authority of the Board over public pension systems and that within these limits the Legislature could change the administrative functions of public pension systems. Two examples which are given are legislation removing the actuarial function from the Board and placing it under a state actuary appointed by the Governor and confirmed by the Legislature, and legislation allowing the use of CalPERS assets to offset employer contribution costs. Both of these examples relate to administration of the CalPERS assets, not to the administration of personnel matters.

The analyst also states that Article XVI, section 17 would give "the board of each public pension system complete authority for administration of the system's *assets* and for the actuarial function." (Ballot Pamp., Gen. Elec., *supra*, Analysis by the Legislative Analyst, p. 37, italics added.) The analysis also states Article XVI, section 17 could have some fiscal impact because it would reduce oversight of the administration of assets. The analysis makes no mention of the administration of anything else.

Thus, the voter intent, evidenced by the published ballot materials, is that Article XVI, section 17 would give the Board the authority to administer the investments, payments, and other services of CalPERS, but not the compensation of the Board or the Board's employees.

*Corcoran v. Contra Costa County Employees Retirement Bd.* (1997) 60 Cal.App.4th 89 [70 Cal.Rptr.2d 385] (*Corcoran*), cited by the Board, is inapposite. At issue was whether the Contra Costa County Employees Retirement Board was an agency governed by the county board of supervisors. It arose because the board of supervisors adopted a resolution applying a multiple-tier retirement scheme to " 'all officers and employees of all agencies of which this Board [the county board of supervisors] is the governing body.' " (*Id.* at p. 91.) The court held the county board of supervisors was not the "governing body" of the retirement board, but expressly recognized the employees of the retirement board were part of the civil service system. (*Id.* at p. 94.) The court found the employees' civil service status was immaterial to the resolution of the issue before it because the retirement board appointed, promoted, and discharged its employees and officers. (*Id.* at pp. 94-95.)

The issue here is not whether some other entity is the governing body of the Board but whether the Board's authority over the administration of the system is in conflict with the laws governing state civil service and payment of expenses. *Corcoran* did not address this issue. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] ["an opinion is not authority for a proposition not therein considered"].)

Nor are we persuaded by the Board's argument that Article XVI, section 17's prefatory phrase "[n]otwithstanding any other provisions of law or this Constitution to the contrary" expresses the voters' intent to have Article XVI, section 17 control over the other provisions of law at issue in this case. The phrase applies only to laws that are "to the contrary." We have concluded the powers the voters intended to give the Board do not include the exclusive and unfettered authority over payments made to and on behalf of its members and employees.

## B.

### Civil Service

As noted, article VII, section 1 of the California Constitution provides that every officer and employee of the state is included in the civil service system, unless exempted. Section 4 exempts one deputy or employee for each board or commission.

The Board claims it has plenary authority under Article XVI, section 17 to classify its portfolio managers as exempt from civil service. If we accept the Board's position that the civil service law does not apply to it, there is no logical reason why the Board would not have plenary authority over the classification and salary of all of its employees who are not otherwise exempt. It does not.

As discussed above, the purpose of the amendments to Article XVI, section 17 is to protect pension funds from interference by the Governor or the Legislature and there is nothing in it from which it could be inferred that it reaches civil service classifications.[14]

---

[14]In a petition for rehearing, the Board argues that we improperly decided the merits of the Controller's sixth cause of action because we decided an issue that had not been addressed by the trial court and had not been proposed or briefed by any party to the appeal in violation of Government Code section 68081. We disagree.

As to the Board's first argument, this court has the power pursuant to Code of Civil Procedure section 43 to "determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case." Pursuant to this section we may direct the trial court to enter judgment where the facts are undisputed, as here, and the proper judgment is apparent from the record as a matter of law. (*Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1459, fn. 7 [66 Cal.Rptr.2d 578]; *Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 440 [296 P.2d 801].)

As to the second argument, Government Code section 68081 directs that before we may render a decision "based upon an issue which was not proposed or briefed by any party to the proceeding" we must afford the parties an opportunity for supplemental briefing. There is no need to do so in this case because the sixth cause of action is based upon an issue thoroughly briefed by both parties, the nature and scope of the "plenary authority" over the "administra-

## III

### *Judgment on the Pleadings*

The Board argues it was entitled to make a factual showing in the trial court that it was impossible to comply with its fiduciary duties under Article XVI, section 17, if it followed the constitutional and statutory provisions and regulations at issue.

As noted, Proposition 162, subdivision (a), provides the assets of the retirement system are trust funds that shall be used for providing benefits to participants and for defraying the reasonable expenses of administering the system. This provision predated and is not a part of the amendments to Article XVI, section 17. Prior to this case it had not been thought that this provision limited the powers of the Legislature to set the terms of reasonableness.

Notwithstanding, the Board claims the provision as a limitation upon the Legislature's authority to adopt rules which limit the pay of the Board and its employees. Accordingly, the Board reasons the trial court should have considered evidence in order to evaluate the reasonableness of the Board's administrative expenditures for itself and its employees.

The Board claims that "as a factual matter, limiting the expenditures at issue to the levels prescribed by statute or regulation would have made it *impossible* for the Board to comply with its fiduciary duties under Section 17." It presents its challenge as an "as applied" challenge requiring the trial court to consider the specific factual circumstances involved.

The Board's analysis is incorrect. It has confused the measure of its power with the reasonableness of its exercise of the power. The rule is first, the application of the rule is second. While Article XVI, section 17 imposes fiduciary duties upon the Board to provide benefits to participants and their beneficiaries and to minimize the risk of loss and maximize the rate of return, it is obvious these duties must be performed by the Board and its employees within the applicable law. There was no need for the Board to present evidence of the reasonableness of its decisions with respect to the exercise of a power it does not have.

A motion for judgment on the pleadings is analogous to a general demurrer. (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*

---

tion of the system" granted the Board by Article XVI, section 17. Implicit in our determination that such authority is limited to the investments, payments to beneficiaries, and similar services of CalPERS, is the determination that Article XVI, section 17 does not overrule the state's civil service laws, including article VII, section 1.

(1996) 44 Cal.App.4th 194, 198 [51 Cal.Rptr.2d 622].) To this end we assume the Board could have proven all of the allegations in its answer. (*Ibid.*; *Pacific Club v. Commercial etc. Co.* (1910) 12 Cal.App. 503, 506 [107 P. 728].) ▉ The trial court assumed the Board concluded it was obligated to make the decisions it made in order to comply with its constitutional mandate, just as we assume these facts for purposes of appeal.

The issue here is not whether the Board makes a facial or as applied challenge to those statutes it claims are in conflict with Article XVI, section 17. ▉ The issue is whether the complaint raises an issue that can be resolved as a matter of law. (*In re Guardianship of Olivia J.* (2000) 84 Cal.App.4th 1146, 1155 [101 Cal.Rptr.2d 364]; *Magna Development Co. v. Reed* (1964) 228 Cal.App.2d 230, 234 [39 Cal.Rptr. 284]; *Estate of Marler* (1957) 148 Cal.App.2d 30, 33-34 [306 P.2d 105].)

▉ The trial court was called upon to interpret Article XVI, section 17. This is purely a question of law. (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 619 [113 Cal.Rptr.2d 309]; *Clemente v. Amundson* (1998) 60 Cal.App.4th 1094, 1102 [70 Cal.Rptr.2d 645].) For reasons stated above, the trial court properly resolved the matter on the Controller's motion for judgment on the pleadings.

Citing *Hustedt v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 329, 343 [178 Cal.Rptr. 801, 636 P.2d 1139],[15] the Board argues that application of the statutes and other provisions at issue would make it impossible to realize the objectives of Article XVI, section 17; thus Article XVI, section 17 repealed those provisions insofar as necessary. The board does not state precisely what objectives could not be realized if it followed the constitutional and statutory law, only that it could not then meet its "fiduciary obligations."

▉ As we read Article XVI, section 17, its objectives are to protect the pension fund and to ensure it is used for providing benefits and services to participants. The payment of Board staff according to existing civil service laws, the payment of members under existing reimbursement limits, and

---

[15]*Hustedt* held the objectives of California Constitution, article XIV, section 4 (to enact a complete package of workers' compensation, to provide for the resolution of any disputes arising under such legislation by an administrative agency which exercised all "requisite" governmental functions, and to resolve disputes arising under such legislation "expeditiously, inexpensively, and without incumbrance") did not require the Workers' Compensation Appeals Board to have the power to suspend or remove attorneys from practice before the board. Therefore, article XIV, section 4 did not effect an implied repeal of the separation of powers doctrine embodied in article III, section 3. (*Hustedt v. Workers' Comp. Appeals Bd., supra,* 30 Cal.3d at p. 344.)

payment of release time reimbursements under existing allowable amounts do not prohibit the realization of these objectives.

## IV

### *CalPERS Funds Are State Funds*

The Board claims that even without Article XVI, section 17, it has the statutory authority to pay its portfolio managers whatever salaries it deems appropriate. It relies upon section 19825, which states in part: "Notwithstanding any other provision of law, whenever any state agency is authorized by special or general statute to fix the salary or compensation of an employee or officer, which salary is payable in whole or in part out of state funds, the salary is subject only to the approval of the department [the DPA] before it becomes effective and payable, except as provided in subdivision (b). The Legislature may expressly provide that approval of the department is not required."

The Board claims its portfolio managers are not paid from state funds, but from CalPERS assets. Citing *Valdes v. Cory* (1983) 139 Cal.App.3d 773, 782 [189 Cal.Rptr. 212], the Board argues these assets are trust funds, not state funds. It claims that once the state makes contributions to the CalPERS fund, it gives up any ownership or power of disposition over the fund for purposes of section 19825.

Whatever else the CalPERS fund may be, section 12320 makes clear it is also state money. It provides that "[b]onds, and other securities or investments belonging to the state, except those of the Public Employees' Retirement System and the State Teachers' Retirement System, shall be received by the Treasurer and kept in the vaults of the State Treasury . . . ." If the CalPERS investments are not investments belonging to the state, there would be no need to except them from the operation of section 12320.

Moreover, as the Controller points out, retirement benefits are contractual obligations of the state and if the CalPERS fund is insufficient to pay the benefits owed to state employees, the state is obligated to pay the money to pensioners from other sources. (*Valdes v. Cory, supra,* 139 Cal.App.3d at pp. 783-784.) Therefore, the state has a valid reason to ensure that payments from the fund to employees meet the requirements of state law.

The trial court ruled that CalPERS is a part of the state, and because section 16305.2 provides that "[a]ll money in the possession of or collected by any state agency or department . . . is . . . state money," the CalPERS

fund is a state fund. The Board argues the "state funds" exception in section 19825 would become meaningless if it included all "money in the possession of or collected by" a state agency or department as provided by section 16305.2. We disagree.

The phrase in section 19825, "which salary is payable in whole or in part out of state funds," is not an exception at all, but simply a recognition the state has no control over salaries it does not fund. We can conceive, and the Legislature could no doubt as well, that an employee could be paid directly from federal or county funds, and that such an employee's salary would not depend on the approval of the DPA.

However, in this case we have money originating from the state's general fund and being held as money "belonging to the state." Notwithstanding the fact the Board has been given plenary authority over the investment and management of the money, it is state money that is at issue, and DPA's approval and the Controller's warrant are necessary before it can be paid out as salaries.

The Board claims the provision of section 20098 that provides in pertinent part that "[t]he board shall appoint and *fix* the compensation of . . . other necessary employees" gives the Board the ability to fix the compensation of the portfolio managers. (Italics added.) This argument fails to recognize the operation of section 19825, which applies in cases where an employee's compensation is fixed by an agency of the state. It provides that "whenever any state agency is authorized by special or general statute to fix the salary or compensation of an employee or officer," the salary or compensation is subject to the approval of the DPA.

V

*Affirmative Defenses*

The Board argues we should reverse the judgment as to the issues of reimbursement for "release time" and travel expenses because it raised affirmative defenses of laches and waiver that could not properly be disposed of on the pleadings.

The facts it claims support these affirmative defenses are: (1) the Controller authorized "release time" payments between 1995 and the initiation of this suit; and (2) the Controller authorized reimbursement of travel expenses in excess of the amounts allowed by statute from 1999 to the initiation of this suit.

The Board's answer alleged merely: "Plaintiff's claims are barred in whole or in part by the doctrine of waiver," and "Plaintiff's causes of action, or some of them, are barred by the doctrine of laches because plaintiff unreasonably delayed bringing suit, causing defendants to reasonably rely on the status quo."

These affirmative defenses consist of legal conclusions that could survive neither a demurrer nor a motion for judgment on the pleadings. (*Mack v. State Bar of California* (2001) 92 Cal.App.4th 957, 961 [112 Cal.Rptr.2d 341]; *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 384 [282 Cal.Rptr. 508]; *Wienke v. Smith* (1918) 179 Cal. 220, 225 [176 P. 42].)

There could be no laches or waiver from the facts the Board asserts in support of its defenses. Just because the Controller has paid reimbursements in the past is not a waiver of the right to refuse to do so in the future if the action is in violation of the law. There can be no laches as to plaintiff's suit for declaratory and injunctive relief over the claims for which payment has been refused. The acts complained of here are in the nature of ongoing wrongs. (See *California Trout, Inc., v. State Water Resources Control Bd.* (1989) 207 Cal.App.3d 585, 631 [255 Cal.Rptr. 184].) The Board cannot assert that because the Controller raised no legal objection to past violations of the law, the office is forever precluded from bringing an action to prevent future violations of those laws. There can be no laches or waiver where the claim is that future payments would be unlawful.

Finally, "neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public." (*County of San Diego v. Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].) The Controller has brought this action in the official capacity as controller of the State of California, representing the interests of the citizens of the state. The Controller seeks to enforce provisions of the civil service laws and the Public Employees Retirement Law.

The civil service laws were passed to limit corruption and to promote efficiency and economy in state government. (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 182 [172 Cal.Rptr. 487, 624 P.2d 1215].) The purpose of the Public Employees Retirement Law is to promote economy and efficiency in government service. (§ 20001.) Both of these schemes are intended to protect the public fisc, thereby protecting the interests of the state's taxpaying citizens.

We will not recognize equitable defenses where the plaintiff in an official capacity seeks equitable relief on behalf of the citizens of this state.

## VI

### *Modification of Judgment*

The Board claims the judgment of the trial court is overbroad and should be modified by striking paragraphs 2 and 3(f). We shall strike paragraph 3(f) and part of paragraph 2 as unnecessary to the judgment.

The Controller's complaint requested injunctive and declaratory relief. The trial court declared in paragraph 2 of the judgment that defendants were subject to sections 1153, 12470, 19816, 19820, subdivision (a), 19825, 19826, 20091, and 20092, as well as the restrictions of article III, section 3.5 of the California Constitution. The trial court also permanently enjoined defendants from acting in such a manner as to violate these statutory and constitutional provisions in paragraph 3 of the judgment.

Paragraph 2 of the judgment provides: "The Court FURTHER DE-CLARES that defendants are subject to Government Code sections 1153, 12470, 19816, 19820(a), 19825, 19826, 20091 and 20092; and defendants are subject to the restrictions of article III, section 3.5 of the California Constitution." The Board claims paragraph 2 is unnecessary because paragraph 3 relies on the same statutes and provisions to enjoin the Board from acting in the complained-of manner.

Paragraph 2, with one exception, to be addressed *post*, is not unnecessary to the opinion. Paragraph 2 is a direct response to the Controller's seventh cause of action that requested "a judicial determination and declaration that defendant's actions to disregard applicable state law and regulations are not authorized by article XVI, section 17 of the California Constitution. Such a declaration is necessary and appropriate at this time so that [the Controller] may ascertain [his] rights and duties without being subjected to liability for violations of article VII, section 1, and article XVI, section 6 of the California Constitution, Government Code sections 1153, 12470, 19820(a), 20091, 20092, and title 2, section 599.619 of the California Code of Regulations."

Paragraph 2 is thus a specific determination of the allegations in the Controller's seventh cause of action. It also provides the reasoning for the injunction that follows. It is not unnecessary to the judgment.

However, we shall grant the Board's request to strike paragraph 3(f) of the judgment and that portion of paragraph 2 that states, "and defendants are subject to the restrictions of article III, section 3.5 of the California Constitution." Article III, section 3.5 provides that an administrative agency has no

power "[t]o declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; [or] [¶] . . . [t]o declare a statute unconstitutional[.]"

We strike this part of the judgment not because it was unnecessary to the trial court's judgment. It was in fact a separate and independent ground for the judgment. However, because we hold the statutes at issue are not made unconstitutional by Article XVI, section 17, we need not decide whether the Board must obtain an appellate court ruling on the constitutionality of the statutes at issue. These portions of the judgment are therefore no longer necessary, as the issue is moot.

## DISPOSITION[16]

The order sustaining the demurrer is overruled and the trial court is directed to enter judgment in favor of the Controller on the sixth cause of action.

The judgment is modified by striking paragraph 3(f) and by deleting the following language from paragraph 2: "; and defendants are subject to the restrictions of article III, section 3.5 of the California Constitution."

In all other respects the judgment is affirmed and our previously issued stay is vacated.

Sims, J., and Robie, J., concurred.

A petition for a rehearing was denied February 25, 2003, and the opinion was modified to read as printed above. The petition of defendants and appellants for review by the Supreme Court was denied April 23, 2003. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.

---

[16]The parties' requests for judicial notice are denied.